State v. Buckner.

THE STATE, Respondent, v. BUCKNER, Appellant.

1. In the case of an indictment for murder the defendant is entitled to a panel of thirty-six jurors ; also to have a list of such jurors delivered to him forty-eight hours before the trial. The " Act to regulate and pay grand and petit jurors in Stoddard county," approved February 13, 1855, (Sess. Acts, 1855, p. 531,) does not in any way affect these rights.
2. The revised code of 1855 governs such proceedings had after May 1st, 1856, although the indictment was pending previous to that date. (See State v. Phillips & Ross, 24 Mo. 475.)
3. If a regular panel of jurors be exhausted before a jury is obtained, the defendant is not entitled to have any particular number of by-standers or talesmen summoned from which to complete the jury.

State v. Buckner.

4. Where an affidavit for a continuance is filed, the court should not permit it to be strengthened by other affidavits of the same person.
5. In the case of an indictment for murder it is error to receive a verdict of the jury in the absence of the defendant. He must be personally present, not only during the trial, but at the time of the rendition of the verdict.

*Appeal from Stoddard Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*C. G. Mauro,* (circuit attorney,) for the State.

RYLAND, Judge, delivered the opinion of the court.

Sarah Buckner was indicted at the March term of the Bollinger Circuit Court, in the year 1855, as principal in the second degree of the murder in the first degree of Whiston Buckner. On the application of the prisoner the venue was changed to the Circuit Court of Stoddard county. The trial of the cause was postponed from term to term until the May term, 1856. At this term the prisoner moved for a continuance, and the record shows that she filed three different affidavits in support of the motion. This motion was overruled, and the defendant excepted, and saved the point by a bill of exceptions. This point will be noticed hereafter. When the trial was ordered the record shows that the prisoner by her counsel " moved the court to order the sheriff to summons a jury of thirty-six to try this cause," which motion was overruled, and excepted to, and this point was saved by the defendant by bill of exceptions. The bill of exceptions shows that the prisoner moved the court to order the sheriff to summon thirty-six venire men, out of whom a jury might be selected ; and " that she might be furnished with a copy of the names of those summoned forty-eight hours previous to the trial ; but the court refused to order the sheriff so to do, and decided that, under the laws regulating jurors in Stoddard county, she was not entitled to have the said number of jurors expressly summoned, and was not entitled to a copy of the panel forty-eight hours ; but defendant's attorney could obtain a copy any time from the clerk." The record

also shows " that during the progress of impanneling the jury, the regular panel of twenty-seven being exhausted, and the accused having challenged peremptorily but six, and one juror being still wanting, the defendant moved the court to direct the sheriff to summons fourteen jurors, which motion was overruled, and excepted to." This point also saved by bill of exceptions.

There were divers matters in regard to questions proposed to some of the witnesses, which the court overruled, and which were excepted to ; but we consider them of no importance. The jury found the defendant guilty of murder in the first degree. This verdict was rendered in the absence of the prisoner. The sheriff, when called on to produce her in court in order to hear the verdict, replied to the court that the prisoner had escaped from his custody, and that he could not then produce her in court. The court received the verdict and discharged the jury. During the term the sheriff again brought the prisoner into court. She moved for a new trial ; which being overruled, she excepted, and prayed an appeal to this court. The court below passed sentence upon the prisoner, but ordered the same to be suspended until the judgment of this court be had upon the premises. The appeal was taken at the May term, 1856, and the record filed in this court on the 9th day of June, 1856.

The record in this case is presented without any brief or without the appearance of any counsel. In examining this record we come to the conclusion that the court below erred in refusing to direct the sheriff to summons thirty-six venire men out of whom a jury might be impanneled ; also erred in refusing to direct that a copy of this venire be delivered to the defendant or to her counsel forty-eight hours before commencing the trial. The " Act to regulate and pay grand and petit jurors in Stoddard county," approved February 13th, 1855, does not take away the right of the defendant to challenge peremptorily twenty persons summoned as jurors in trials for murder ; nor does it pretend to take away the right of the accused to have a copy of the venire, from which the

jury is to be sworn, forty-eight hours before commencing to impannel the jury. The statute concerning practice in criminal cases (art. 6, § 6,) gives to the State the right, in all criminal trials, to challenge peremptorily four jurors. Section 7 declares that "there shall be summoned and returned, in every criminal cause, a number of qualified jurors equal to the number of peremptory challenges, and twelve in addition; and no party shall be required to make peremptory challenges before a panel of such number of competent jurors shall be obtained." Section 8. "A list of the jurors summoned shall be delivered to the defendant in the cases specified in the two first subdivision of the fourth section of this article, at least forty-eight hours before the trial, and in other cases before the jury is sworn, if such list be requested." Section 4, first subdivison : "If the offence charged is punishable with death, or by imprisonment in the penitentiary not less than for life, the peremptory challenges shall be twenty, and no more, allowed to the defendant." The crime of murder charged in the indictment in this case is punishable with death. Then the accused is allowed to challenge twenty peremptorily—the State four—making twenty-four challenges, and twelve in addition—making thirty-six. This number is required to be summoned in all such cases ; and in order to make this right of challenge beneficial to the prisoner, she has the right to a copy of the list of the thirty-six forty-eight hours before the trial. The statute concerning practice in criminal cases was approved December 8, 1855, is subsequent to the "jury law" of Stoddard county, and where these two laws are irreconcilable, the last must prevail. It is our duty to reconcile these laws as far as we can consistently do so ; but when this can not be done, the former must succumb to the latter. I suppose it never entered into the head of a legislator that by passing the jury law of Stoddard county, he intended thereby to deprive the citizen of the most important privileges guarantied to him by the general law—of the right to challenge in trials for murder, and of the right to exercise this challenge judiciously by having a copy of the

State v. Buckner.

list of the jurors for forty-eight hours at least before he should be called upon to challenge. This is the law governing the selecting and impanneling a jury in a case of murder, whether we consider the proceedings under the revised code of 1855 or revised code of 1845. In the revised code of 1855, the fourth section is obviously meant instead of the third section of article six. I have referred to the fourth instead of the third. The revised code of 1845 refers to the third section very properly; but in 1855, it is the fourth section and not the third. I have been thus particular in order to let the court below see we noted the mistake. The proceedings in this case are governed by the laws revised in 1855. (See R. C. 1855, p. 1025, § 16.) The refusal to order the sheriff to summons thirty-six jurors and to give defendant a list of the persons thus summoned forty-eight hours before the trial commenced is error; and there is no knowing how seriously this error may have injured the defendant. This court said, in the case of the State v. Samuels, 3 Mo. 68, that it was not necessary for the court to have a writ of *venire facias* issued to the sheriff, or to have an order entered on the records of the court requiring him to summons such a venire of jurors; but for the court to order or direct the sheriff *ore tenus* would be sufficient.

There is nothing in the point complained of by the defendant in regard to the sheriff's not being ordered to summon fourteen by-standers or talesmen and giving a list of them to defendant. Whenever there has been a proper panel summoned and the defendant has been properly furnished with a list of the panel, and such panel becomes exhausted before a jury be made up, then in summoning from the by-standers there is no law requiring any particular number to be thus summoned, and none requiring a list of them, when summoned, to be furnished to the defendant.

The record shows that the prisoner filed three different affidavits for a continuance. This shows a very loose practice, and the affidavits are drawn very carelessly—without precision or skill. Had the matters set forth in these vari-

ous affidavits been properly presented, we think that the court should have granted a continuance. Surely the mistake in the clerk who issued the subpœna commanding the witness to attend on the 18th of May, 1856, which is alleged to be a Sunday or Sabbath day, instead of on the 19th of May, the day the court commenced its session, could have afforded no reason sufficient to disregard that subpœna, and the mere mistake in the given name of the witness could not have justified the court in disregarding such subpœna. This court does not countenance the practice of filing affidavit on affidavit for a continuance. Let the party state the facts on which she relies for a continuance distinctly and fully at first, and not resort to the practice of mending affidavit after affidavit as soon as the views of the court become known in regard to the sufficiency of the same. I mention this matter in order that it may be avoided in future. The best practice is not to permit an affidavit for a continuance to be strengthened by one or more affidavits of the same person. Let parties make full statements at first.

In regard to the receiving of the verdict of the jury by the court in the absence of the prisoner, we think this is a fatal error. Our statute expressly declares "That no person indicted for a felony can be tried unless he be personally present *during* the trial." (R. C. 1855, p. 1191; Practice in Criminal Cases, art. 6, § 16.) "The verdict, in all cases of felony and treason, must be delivered in open court in the presence of the defendant." (1 Archb. C. P. 173, note 2.) "The verdict, whatever may be its effect, must in all cases of felony and treason, be delivered in the presence of the defendant in open court, and can not be either privily given or promulgated while he is absent; and in all cases where the jury are commanded 'to look on him,' as in larceny, and all accusations subjecting him to any species of mutilation or loss of limb, the same rule applies, without exception." (1 Chitty's C. L. 636.) In the case of the State v. France, 1 Overton, (Tenn.) 434, the court said: "The prisoner must be at the bar; otherwise the jury could not be asked for their

verdict; and if he does not appear, the jury must be discharged without rendering any verdict. In every case affecting life or limb, the accused must not only be present when the evidence is given in, but during the trial, and on return of verdict." In the case of the People v. Perkins, 1 Wend. 91, the court said : " We are of opinion that the verdict was irregular. The prisoner was indicted and tried for an offence formerly called capital; and though many of the ancient forms on trials are now dispensed with, the prisoner should have been present on receiving the verdict, so that he might have availed himself of the right of polling the jury." In Nomaque v. The People, 1 Ill. 109, similar doctrine is held. We therefore think that the court had no right to receive the verdict of the jury in the absence of the prisoner in this case.

The record shows no instructions—no evidence saved. We have examined the record carefully, and it is our opinion that the court below committed errors in the various particulars pointed out in this opinion. The judgment must therefore be reversed, and the cause remanded, to be proceeded with according to the principles laid down in this opinion ; Judge Scott concurring ; Judge Leonard absent.