State v. Cross.

THE STATE, Respondent, v. CROSS, Appellant.

1. In a capital case, the defendant must be present at the time of the rendition of the verdict; and the record must affirmatively show his presence.
2. Drunkenness does not mitigate a crime; nor can it be taken into consideration by a jury in determining whether a person committing a homicide acted thereon wilfully, deliberately and premeditatedly so as to constitute the crime committed murder in the first degree. (RICHARDSON, Judge, dissents from this doctrine, holding that, although a homicide committed wilfully, deliberately and premeditatedly is in no way mitigated or excused by drunkenness, yet, since the quality and grade of the offence depend upon the state of mind of the accused at the time of the commission of the alleged crime, his drunkenness may be taken into consideration by the jury in determining whether the killing was done wilfully, deliberately and premeditatedly.)

*Appeal from Franklin Circuit Court.*

*C. Jones*, for appellant, cited State v. Buckner, 25 Mo. 167; 1 Mo. 700; 3 Mo. 28; 6 Mo. 444; 8 Mo. 500; 9 Mo. 19; 12 Mo. 492; R. C. 1855, p. 1191; 1 Archb. C. P. 173; 1 Chitty, C. L. 636; State v. France, Overton, 424; 1 Wend. 91; 1 Ills. 109; 5 Yerg. 340; 11 Humph. 154; 4 id. 136; Pyrtle v. The State, 9 Humph. 663; Whart. on Hom. 369; 15 How. Prac. 557.

*Mauro*, (circuit attorney,) for the State.

NAPTON, Judge, delivered the opinion of the court.

The judgment in this case must be reversed because the record does not show that the defendant was present in court when the verdict was rendered. The entire record of the

proceedings of the court, in relation to this trial, on the day when the verdict was rendered, is as follows, to-wit: "And afterwards, to-wit, on the 6th day of said month, in the year aforesaid, and at the adjourned term aforesaid, the further following appears of record, to-wit: "State v. Nelson Cross. And the jurors aforesaid this day return into court and upon their oaths do say, we, the jury, find the defendant guilty of murder in the first degree, as charged in the indictment." The authorities are very clear and entirely uniform, both the English and American cases, that the prisoner must be present in a capital case when the verdict is rendered and the record must affirmatively show this. (Rex v. Geary, 2 Salk. 130; Dunn v. The Commonwealth, 6 Barr, 384; Hamilton v. Commonwealth, 4 Harris, 133; State v. France, Overton, 435; 1 Wend. 91.) It was so held, substantially, by this court in The State v. Buckner, 25 Mo. 172. We do not infer because the record shows the defendant was present in court on one day that he was therefore present on the following day. In the case of Dunn v. The Commonwealth, 6 Barr, 384, the record showed that the prisoner was arraigned on the 11th of November, 1844, and it is stated on the record that on that day a jury came, who are named, and the record then proceeded: "Men duly summoned, returned and chosen by ballot, empannelled and sworn November 13, 1844, who, upon their oaths do say," &c. The court held that the record did not show that the prisoner was present when the verdict was rendered, although the record did show that on the 11th the prisoner was arraigned and was of course before the court, and leaves no inference that he was even absent from the court-house from that day when the jury was sworn until the 13th, when the verdict came in. This too purported to be the record of several days' proceedings in one entry; here, the records of each day's proceedings are distinct, as they ought to be, but the record of the proceedings of the 6th day does not show that on that day the prisoner or his counsel was ever in court.

The following instruction was asked upon this trial by the

counsel for the prisoner and refused : " That before the jury
can find the prisoner guilty of murder in the first degree
they must ascertain as a matter of fact that the accused was
in such a state of mind as to do the act of killing wilfully,
deliberately and premeditatedly and maliciously, and any
fact that will shed light upon the condition of his mind at
the time of the killing may be looked into by them, and con-
stitutes legitimate proof for their consideration ; and among
other facts, any state of drunkenness being proven, it is a
legitimate subject of inquiry as to what influence such in-
toxication might have had upon the mind of the prisoner in
the perpetration of the deed, and whether he was not, at the
time of the killing, in such a state of mind by reason of in-
toxication as would be unfavorable to the commission of a
crime requiring deliberation and premeditation." The court
gave the following instruction on this branch of the case:
" The jury are further instructed that if the circumstances
attending the killing, the weapon used, the nature and ex-
tent of the injury inflicted, and the amount of violence used,
with all the other evidence in the case, satisfy them that
Cross intended to kill McDonald, then the circumstance of
his being drunk at the time is not sufficient to repel the in-
ference of malice and premeditation arising out of such evi-
dence, or to mitigate the offence from murder in the first
degree to murder in the second degree, or any other less
offence."

The old and well established maxim of the common law
is, that drunkenness does not mitigate a crime in any respect;
on the contrary, that it rather is an aggravation. Insanity
is a full and complete defence to a criminal charge ; yet
drunkenness is a species of insanity, and is attended with a
temporary loss of reason and power of self-control. But
drunkenness is voluntary ; it is brought about by the act of
the party, whilst insanity is an infliction of Providence, for
which the party affected is not responsible. This is under-
stood to be the basis of the distinction which the law has
made between these two kinds of *dementia*, and is the prin-

cipal reason why the rules of law have been settled so as to allow the one madness to constitute an exemption from legal responsibility, but deny to the other any mitigating qualities whatever. There are also obvious reasons of public policy why the law should be so established.

Some efforts have been made, of comparatively recent date— for the maxim we have quoted is as old as the common law itself—to qualify or to get rid of this ancient rule. Some very authoritative books on criminal law and some courts of great respectability, both in England and this country, have suggested interpretations and modifications of the axiom, tending, as we think, to subvert the principle itself for all practical purposes. Russell, in his work on crimes, says : " Though voluntary drunkenness can not excuse from the commission of a crime, yet when, as upon a charge of murder, the material question is, whether an act was premeditated - or done only with sudden heat and impulse, the fact of the party being intoxicated *has been holden* to be a circumstance proper to be taken into consideration." The authority for this suggestion of Russell is the case of Rex v. Grindley, decided at the Worcester assizes in 1819 ; but in Rex v. Carrol, 7 Carr. & Payne, 145, Parke, B., in the presence of Littledale, J., said " that case was not law."

In this country, the subject is very ably discussed by Judge Turley, of the supreme court of Tennessee, in the case of Pyrtle v. The Commonwealth, 9 Humph. 663, and by Judge Wardlaw, of South Carolina, in the case of Hute v. McCarty, 1 Spear, 392. The authorities on both sides of the question are pretty generally referred to and reviewed in each of these cases, yet the results to which the two courts arrived were quite the opposite of each other. It is true the supreme court of Tennessee declare their maintenance of the ancient doctrine of the common law in all its original severity, and repudiate quite distinctly the case of Rex v. Grindley, and the dictum of Russell based thereon; but by a process of ingenious reasoning the court seem to arrive at a conclusion indirectly overturning the principles and rules they start out

with, maintaining and leading practically to the doctrine advanced by Russell and the decision of Justice Holroyd in Rex v. Grindley. It is not perceived how drunkenness can be held to be a circumstance proper to be considered by a jury in determining the question of premeditation and malice, and at the same time be considered as no mitigation of the crime. It is said that there is no inconsistency in the two doctrines, because the fact of drunkenness may show that the crime charged was not committed. If the crime charged was not committed, then it is immaterial whether the defendant was drunk or sober; he is, in either event, entitled to an acquittal. But if all the circumstances in the case, except drunkenness, show that the crime charged was committed, and drunkenness alone is the circumstance to show that by reason of its intervention among the circumstances of the case the crime was different from what it would have been in the absence of this circumstance, then it is manifest that this circumstance alone has produced the mitigation, and the old principle of the common law, which pronounces drunkenness to be no mitigation, is overturned.

In the case of Pyrtle, it is conceded in the opinion that, except in relation to the two grades of homicide, distinguished in their code as they are in ours as murder in the first and second degrees, drunkenness would not be a legitimate subject of inquiry; that upon the question of provocation it should have no weight, but on the question of premeditation it should. It is singular that in Rex v. John Thomas, 7 Carr. & P. 735, a British Judge—Baron Parke—took quite the opposite position. He is reported to have said to the jury : " I must also tell you that if a man makes himself voluntarily drunk, this is no excuse for any crime he may commit when he is so ; he must take the consequences of his own voluntary act, or most crimes would go unpunished. But drunkenness may be taken into consideration in cases where what the law deems sufficient provocation has been given, because the question is, in such cases, whether the fatal act is to be attributed to the passion of anger exci-

ted by the previous provocation, and that passion is more easily excitable in a person when in a state of intoxication than when he is sober." The supreme court of South Carolina, in commenting on this charge of Baron Parke, admit its propriety, if it is to be understood as maintaining that he who is in a state of voluntary intoxication is subject to the same rule of conduct and the same legal inferences as the sober man, and that when a provocation is received which, if acted on instantly, would mitigate the offence of a sober man, and the question in the case of the drunken man is, whether that provocation was in truth acted upon, evidence of intoxication may be considered in deciding that question. But the remarks of Baron Parke, thus construed, would clearly be unfavorable to the defence, and would substantially make intoxication an aggravation rather than a mitigation.

The case put by Judge Turley to illustrate his views, and probably as strong a case as could be imagined, is, where the crime charged is murder by poison, and the question is, whether the poison was administered intentionally or by mistake. The facts supposed are, that two medicines are on the table—the one poison and the other not—and the poison is administered. The inquiry made is, whether the fact that the man who administered the poison was drunk is not evidence to show the probability of mistake. The answer is very easy if we adhere to the doctrine that drunkenness does not palliate or mitigate a crime. A mistake or accident may happen to a man, whether drunk or sober, and if they are more likely to occur when in the former predicament, he is not entitled to any advantage over the sober man by reason of this. If he is, the maxim of the common law is worthless, or is so easily evaded as to furnish no practical guide in the administration of justice; there is one rule for the sober man and another for the drunken man.

According to our understanding of the law, the instruction asked by the defendant in this case was properly refused; such instructions, we think, would subvert ancient and well settled principles, and proclaim virtual impunity to the most

enormous crimes. It would only be necessary for a man to dethrone his reason by intoxicating drafts—reduce himself to a state of brutal insensibility to the value of human life, and then take shelter under the plea of drunkenness for protection against the consequences of his acts. If a man can thus divest himself of his responsibilities as a rational creature and then perpetrate deeds of violence with a consciousness that his actions are to be judged by the irrational condition to which he has voluntarily reduced himself, society would not be safe. To look for deliberation and forethought in a man maddened by intoxication is vain, for drunkenness has deprived him of the deliberating faculties to a greater or less extent; and if this deprivation is to relieve him of all responsibility or to diminish it, the great majority of crimes committed will go unpunished. This however is not the doctrine of the common law; and to its maxims, based as they obviously are upon true wisdom and sound policy, we must adhere.

The instruction given by the circuit court was, in our opinion, substantially correct. It might and perhaps ought to be so modified as to include, among the circumstances specifically alluded to, some of those favorable to the prisoner in connection with those already stated of an unfavorable bearing, such as the previous relations of the parties, the previous and subsequent conversations, &c.

The judgment will be reversed and the cause remanded.

RICHARDSON, Judge. Every homicide is not murder, but the quality of the offence depends on the intent of the offender, and therefore the mental *status* at the time of the act must be ascertained before the legal character of the crime is determined. To constitute murder in the first degree, it must be committed wilfully, deliberately and premeditatedly. This condition of the mind is proven when death is inflicted by poison or lying in wait for that purpose; but if neither of these circumstances attend the killing, the ingredients to constitute murder must be proved, and the ability of the .

accused to form a purpose, to think, or deliberate, must be considered. The question is not whether there ought to be one law for a sober man and another law for a drunken man, nor whether drunkenness will mitigate the criminality of an act; for if a man commits wilful, deliberate and premeditated murder, he is guilty, drunk or sober, and deserves to suffer death; and drunkenness will not excuse or mitigate the offence, if it were done wilfully, deliberately and premeditatedly. But the inquiry is, whether in fact the crime has been committed; and as the essence of the crime of murder is made by law to depend upon the condition of the criminal's mind at the time, all the circumstances ought to be heard in evidence to enable the jury to decide whether such wilful, deliberate and premeditated design existed; and drunkenness is a proper subject to be considered by the jury for whatever it is worth in determining the state and condition of the mind.

In the lower grades of felony, in which the intent is an essential element of the offence, evidence of drunkenness is always admissible. Thus, in a prosecution for passing counterfeit money, guilty knowledge must be shown, and in the absence of it there is no offence. An honest man may knowingly have a counterfeit bank bill in his pocket, and may innocently pass it; and if he were indicted for passing it, inasmuch as the criminality of the act depends on the knowledge and the motive, the law would be cruel and abhorrent to our sense of justice that would deny him the right to show that he was so drunk at the time that he could not tell a good bill from a bad one. No reason is perceived in principle or public policy why less humanity should be exhibited in the administration of the law concerning higher offences, and, in my opinion, the substance of the instruction asked by the defendant should have been given.