STATE of Missouri, Respondent,

v.

John FANNING, Sr., Appellant.

Nos. WD 50526, WD 51978.

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for respondent.

Before SPINDEN, P.J., and ULRICH, C.J., P.J., and SMART, J.

ULRICH, Chief Judge, Presiding Judge.

John Fanning appeals his convictions for murder in the second degree, section 565.021, RSMo 1994, and armed criminal action, section 571.015, RSMo 1994. He was convicted a second time after his prior convictions for the same charges were reversed and the case was remanded for a new trial. *State v. Fanning,* 874 S.W.2d 401 (Mo.App. W.D.1994). He asserts that section 562.076 violated his constitutional due process rights under the United States Constitution and Article 1, sections 10 and 18(a) of the constitution of the state of Missouri by precluding his submission of evidence that he could not discern the consequences of his conduct because of his state of intoxication and his mental deficiencies at the time the victim was stabbed to death. He claims the trial court erred in using MAI–CR3rd 310.50 to instruct the jury because the instruction informed the jury that intoxication from alcohol does not relieve a defendant of responsibility for his conduct, and the instruction creates a presumption that he had the requisite mental state required by the charged offenses thereby violating his state and federal constitutional rights to due process. He also appeals the denial of his Rule 29.15 post-conviction motion without an evidentiary hearing claiming that his trial counsel breached the standard required when he failed to call Mr. Fanning as a witness at his trial and failed to compel the attendance and testimony of other witnesses. He also claims the motion court erred when it did not enter findings of fact and conclusions of law as mandated by Rule 29.15(i).

The judgment of convictions is affirmed, and the order denying the post-conviction motion is affirmed in part and reversed and remanded in part.

### Relevant Facts

John Fanning was convicted of murder in the second degree and armed criminal action. The charges resulted after Mr. Fanning fatally stabbed the victim during a fight. Mr. Fanning has an IQ of seventy-five and claimed that he was intoxicated when he stabbed the victim. Mr. Fanning asserted that he was incapable, due to his IQ and his state of intoxication, of knowing that his conduct was practically certain to cause the death of the victim. The trial court instructed the jury that "an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct." § 562.076, RSMo 1994; MAI–CR 3rd 310.50. Mr. Fanning was convicted of both counts of the information and sentenced to two concurrent life terms. These convictions, however, were reversed on appeal because the instruction, without more, created the likelihood that the jury would believe the defendant was guilty because he was intoxicated, whatever his state of mind. *Fanning,* 874 S.W.2d at 401–02 (citing *State v. Erwin,* 848 S.W.2d 476, 482 (Mo. banc 1993), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)).

Mr. Fanning was retried, and the jury was again instructed using a MAI–CR 310.50 as amended. The instruction was altered and approved after Mr. Fanning's first trial. Mr. Fanning was again convicted of murder in the second degree and armed criminal action and sentenced to concurrent terms of life imprisonment. He appeals this second conviction and the denial of his Rule 29.15 motion without a hearing.

### Jury Instruction Regarding Intoxication, MAI–CR3d 310.50 [1]

■ Mr. Fanning's first point attacks MAI–CR3d 310.50, submitted to the jury as Instruction No. 12. He contends that the instruction created the impression that he had the requisite mental state and relieved the prosecution of proving beyond a reasonable doubt that he had the necessary mental state when the victim was stabbed. The instruction stated:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not

---

1. The term "intoxication" is meant to refer to "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." Model Penal Code § 2.08(5)(1)(Proposed Official Draft 1962).

relieve a person of responsibility for his conduct.

Mr. Fanning admits that Instruction No. 12 followed the format of approved criminal instructions as mandated by MAI–CR. The essence of Mr. Fanning's claim is that the instruction failed to remedy the constitutional flaw identified in the earlier approved instruction pertaining to voluntary intoxication. In *State v. Erwin*, 848 S.W.2d 476 (Mo. banc 1993), *cert. denied*, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), the Missouri Supreme Court found that the then existing version of the voluntary intoxication instruction implicitly relieved the state of its burden of proving intent beyond a reasonable doubt and was, therefore, unconstitutional. *Id.* at 483. The present MAI–CR3d 310.50 became effective on October 1, 1994, after the Supreme Court decision of *Erwin*. The instruction remedied the flaw identified in the earlier version. Unlike the earlier version which appeared to "stand by itself," the present version reminds the jury that the state's burden to prove every element of the charged crime beyond a reasonable doubt is not abated.

■ The Court of Appeals lacks authority to declare an instruction erroneous if the instruction complies with pattern instructions approved by the Missouri Supreme Court. *State v. Bell*, 906 S.W.2d 737, 739 (Mo.App. E.D.1995). Instruction No. 12 comported with MAI–CR3d 310.50. Point one is denied.

### Exclusion of Testimony Regarding the Effect of Intoxication on Mr. Fanning

■ Mr. Fanning claims the trial court erred in precluding the testimony of his proffered expert that his level of intoxication, in combination with his claimed brain damage, would have impaired his ability to appreciate the nature, quality, and wrongfulness of his conduct. Mr. Fanning pleaded not guilty by reason of mental disease or defect.[2]

Mr. Fanning sought to present evidence through expert testimony that any consumption of alcohol, in combination with his claimed degree of brain damage, would have impaired his ability to appreciate the nature, quality, and wrongfulness of his conduct. The trial court excluded evidence of Mr. Fanning's intoxication as it related to his mental state. The court's stated reason for exclusion was section 562.076, RSMo 1994, as interpreted by *State v. Erwin*. Mr. Fanning concedes that section 562.076, RSMo 1994, mandates giving MAI–CR 3d 310.50. Section 562.076 states:

1. A person who is in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition.

3. Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated or drugged condition has been received into evidence.

The effect of the exclusion of the proffered evidence, claims Mr. Fanning, relieved the state of its burden to prove all the elements beyond a reasonable doubt and also denied him, in violation of federal and state constitutionally mandated due process, the ability to present to the jury all relevant evidence to rebut the state's evidence on the *mens rea* element of the offenses.

The U.S. Supreme Court in *Montana v. Egelhoff*, —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), recently addressed this issue. The Court upheld as constitutional a similar Montana statute that excludes evidence relating to intoxication where the in-

---

**2.** "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct." § 552.030, RSMo 1994.

toxication was voluntary.[3] The Court held that it is the "respondent who must show that the principle of procedure *violated* by the rule (and allegedly required by due process) is 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Egelhoff,* —— U.S. at ——, 116 S.Ct. at 2019 [citations omitted]. Justice Scalia, writing for the majority stated:

> The people of Montana have decided to resurrect the rule of an earlier era, disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue. Nothing in the Due Process Clause prevents them from doing so.

*Id.* at ——, 116 S.Ct. at 2024.

■ Missouri has a long history of rejecting voluntarily induced intoxication as negation of the required mental state constituting an element of the charged offense.[4] Defining the parameters of the mental state that comprises the *mens rea* element of crimes is within the providence of the General Assembly. Missouri's courts have traditionally "decline[d] to consider overturning a rule which goes back to 1855 and the case of *State v. Harlow,* 21 Mo. 446, and which has been reaffirmed many times since." *State v. Richardson,* 495 S.W.2d 435, 440 (Mo.1973).[5] As Justice Scalia noted in *Egelhoff,* the Missouri Supreme Court stated in 1858 that:

> To look for deliberation and forethought in a man maddened by intoxication is vain, for drunkenness has deprived him of the deliberating faculties to a greater or less extent; and if this deprivation is to relieve him of all responsibility or to diminish it, the great majority of crimes committed will go unpunished. This however is not the doctrine of the common law; and to its

maxims, based as they obviously are upon true wisdom and sound policy, we must adhere.[6]

■ The State of Missouri therefore has historically "treat[ed] a sober person and a voluntarily intoxicated person as equally responsible for conduct." *Erwin,* 848 S.W.2d at 482. As with any sober person, direct proof of a required mental state is seldom available, and the defendant's intent is inferred from circumstantial evidence. *In Interest of N.A.G.,* 903 S.W.2d 664, 668 (Mo. App. W.D.1995). The defendant's "mental state can be determined from his testimony, evidence of his conduct before the act, the act itself, and his subsequent conduct." *State v. Runyon,* 619 S.W.2d 955, 957 (Mo.App.1981). To do otherwise would unjustly vindicate the voluntarily intoxicated person's unlawful conduct because the person was intoxicated. The reasoning is expressed in *State v. Cross,* 27 Mo. 332, 337 (1858): "A mistake or accident may happen to a man, whether drunk or sober, and if they are more likely to occur when in the former predicament, he is not entitled to any advantage over the sober man by reason of this."

For example, assume a murder charge requires the state to prove that the defendant intended to kill a human being. The state is able to show that the defendant aimed a firearm at the victim and shot him point-blank. If this is the only evidence, the jury will likely conclude beyond a reasonable doubt that the defendant did have the requisite intent. To distinguish between whether the defendant did so while sober or voluntarily intoxicated would hold the sober defendant accountable for the murder while providing the intoxicated defendant an excuse for the same behavior. Missouri's social policy ex-

---

3. Mont.Code Ann. § 45–2–203 (1995) states in part that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense."

4. Missouri, for a brief time, altered the jury's requisite findings of the necessary mental state as to certain crimes when the defendant offered evidence of his voluntary intoxication. January 1, 1979, Sec. 562.076 RSMo 1978, until October 1, 1984, Sec. 562.076 RSMo Supp.1984. Under that statute, intoxication of sufficient degree "negatives the existence of the mental states of

purpose or knowledge when such mental states are elements of the offense charged ..."

5. Citing *State v. Garrett,* 391 S.W.2d 235 (Mo. 1965); *State v. Shipman,* 354 Mo. 265, 189 S.W.2d 273 (Mo.1945); *State v. Jordan,* 285 Mo. 62, 225 S.W. 905 (Mo.1920); *State v. Brown,* 181 Mo. 192, 79 S.W. 1111 (Mo.1904); *State v. Hundley,* 46 Mo. 414 (Mo.1870);*State v. Cross,* 27 Mo. 332 (Mo.1858).

6. *Egelhoff,* —— U.S. at ——, 116 S.Ct. at 2019 (quoting *State v. Cross,* 27 Mo. at 338).

pressed in section 562.076 is the same as that manifested in any Missouri criminal law—to protect the public from unacceptable conduct. The "criminal law's primary function [is to] protect[ ] society from the results of behavior that endangers the public safety." *State v. Gullett,* 606 S.W.2d 796, 802 (Mo.App.1980). The *Egelhoff* court, noting the Missouri legislature's motivation for enacting such a statute, stated:

> Disallowing consideration of voluntary intoxication has the effect of increasing the punishment for all unlawful acts committed in that state, and thereby deters drunkenness or irresponsible behavior while drunk. The rule also serves as a specific deterrent, ensuring that those who prove incapable of controlling violent impulses while voluntarily intoxicated go to prison. And finally, the rule comports with and implements society's moral perception that one who has voluntarily impaired his own faculties should be responsible for the consequences.

*Egelhoff,* —— U.S. at ——, 116 S.Ct. at 2020.

The United States Supreme Court's decision in *Egelhoff* does seem, however, to require that the statute in question be reviewed to discern whether it serves a "substantive" rather than merely "evidentiary" purpose.[7] The primary rule of statutory construction requires a court to discover legislative intent by considering the plain and ordinary meaning of words used

in the statute, and when the language of a statute is clear and unambiguous, no room for construction exists. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992).

Placement of section 532.076[8] suggests the legislature intended that the statute constitute more than just evidentiary directives.[9] The first sentence of section 532.076 states the unequivocal and substantive proposition that an intoxicated person *is* responsible for his conduct.[10] Although the legislature has decreed that the voluntarily intoxicated person is just as responsible for his conduct as any sober person, the statute must be read completely to understand how and under what circumstances that will occur. At least three ways exist by which the legislature may make the voluntarily intoxicated person as liable as the sober person, one of which is now apparently unconstitutional.

The first way is to impute a mental state to the intoxicated person that the person does not possess by making voluntary intoxication the legal equivalent of the necessary *mens rea.* This approach, in effect, ascribes to the intoxicated individual the requisite mental state when such person is engaged in criminal conduct. This convention is by far the broadest. Once voluntary intoxication occurs, the person is guilty every time the necessary *actus reas* is completed.

A second alternative is to prohibit the defendant from introducing evidence that would

---

7. Four members of the Court's majority held Montana's statute constitutional—no matter how they might characterize it. The remaining five members held that if characterized as an evidentiary-based statute, a violation of due process occurs. Because Montana's own Supreme court characterized its statute as "evidentiary," four of those five members found the statute unconstitutional. In concurring with the majority, Judge Ginsburg found that despite Montana's characterization, the statute was in fact "substantive," redefining the *mens rea* element of the offense.

8. The predecessor to the current version of Sec. 562.076 that allowed voluntary intoxication as a defense to specific intent crimes is extensively discussed and construed in *Gullett,* 606 S.W.2d at 799–806.

9. Section 562.076 appears in the Chapter entitled "General Principles of Liability" rather than in Missouri's Chapter on evidence.

10. If read literally, the statute seems to make the state of intoxication a crime—"*is* criminally liable for conduct" (emphasis added) rather than the more qualified "can be." For example, Sec. 562.036, RSMo 1978, stated that a person can be criminally responsible for the conduct of another of which MAI–CR 2d 2.10 instructed the jury. Sec. 562.041.1(2), RSMo 1978, then defined when a person would be so liable. It is apparent the legislature intended that an intoxicated person is criminally liable for conduct in the same way as any sober person is criminally liable— when the state proves beyond a reasonable doubt all elements of the offense. As such, the phrase "is criminally liable for conduct" is incomplete. The intent of the legislature is that the voluntarily intoxicated person is liable for unlawful conduct.

refute or defeat the necessary *mens rea* for the sole purpose of barring the "defendant's use of a category of relevant, exculpatory evidence for the express purpose of improving the State's likelihood of winning a conviction against a certain type of defendant." *Egelhoff,* —— U.S. at ——, 116 S.Ct. at 2029 (O'Connor dissenting). The *Egelhoff* Court seems to say that this method distorts the adversary process and offends due process. *Id.*[11]

The Missouri legislature has chosen a third alternative that ignores the voluntarily intoxicated state of mind.[12] Having stated the substantive proposition that the intoxicated person is criminally liable for conduct, subparagraphs (2) & (3) explain that the legislature intended to do this by denying or adding "defenses." The General Assembly has chosen to ignore the voluntarily intoxicated state of mind.

■ Defining the requisite state of mind by the addition or prohibition of defenses is nothing new to Missouri law.[13] Section 552.030, for example, provides a defense to all crimes if the individual is "incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct" due to mental illness or defect. When invoked by the defendant, section 552.030 adds the additional burden for the prosecution to prove beyond a reasonable doubt that, not only the necessary mental and physical elements of the crime were committed but that the defendant was capable of knowing and appreciating the nature, quality, or wrongfulness of the conduct. Section 562.076 operates in the same manner, requiring the defendant to inject the issue of intoxication. If not done, as in the cases of other defenses such as insanity or alibi, the defendant waives the defense.

Another example is the "reasonable belief of age" defense under section 566.020 for certain crimes that, if successful, successfully abrogates criminal liability. Therefore, if the male defendant charged with rape does not know that the female accuser is non-consenting, and her conduct causes him to believe that she consents, rape has not occurred. *State v. Cunningham,* 100 Mo. 382, 12 S.W. 376, 379 (Mo.1889). The statute, however, makes the "reasonable belief" state of mind irrelevant regarding sexual offenses committed against individuals thirteen years old and younger. "Whenever in this chapter the criminality of conduct depends upon a child being thirteen years of age or younger, it is no defense that the defendant believed the child to be older." § 566.020(2), RSMo 1994. Section 562.076 makes the intoxicated state of mind relevant depending on how it was induced. Section 532.076 does not allow involuntary intoxication as a defense to negate the necessary *mens rea* of any particular offense. Rather, it treats the defense of involuntary intoxication as coextensive with disability arising from mental disease or defect. *State v. Gullett,* 606 S.W.2d 796, 800 (Mo.App.1980).

■ In contrast to the first alternative that makes the voluntarily intoxicated person criminally liable *because of* voluntary intoxication, Missouri provides that a person is criminally liable if the state proves all the necessary elements of the crime beyond a reasonable doubt *despite* intoxication. Missouri has defined all of its criminal offenses so as to render voluntary intoxication legally irrelevant. This method is more restrained as it does not create the same kind of liability as imputing a required *mens rea* from a state of voluntary intoxication. Under the imputed *mens rea* convention, all voluntarily intoxicated persons would be criminally liable if accompanied by the necessary *actus reas.* Rejecting that approach, the Missouri legislature intended that only those voluntarily intoxicated persons of whom the State has satisfied its burden of proof will be found criminally liable—the same as any sober per-

---

**11.** Although the plurality opinion questioned the distinction between the fact to be proved and the method proving it (substantive vs. evidentiary), only four justices joined in that observation. *U.S. v. Scheffer,* 44 M.J. 442, 448 (U.S.Armed Forces 1996).

**12.** Voluntary intoxication under Section 532.076 is relevant to the issue of voluntariness of conduct.

**13.** "Abolishing a defense is within the authority of a state legislature." *Scheffer,* 44 M.J. at 448 (referring to *Egelhoff*).

son. Because the legislature has legally defined the *mens rea* of all criminal offenses to be unaffected by the voluntarily intoxicated state of mind, subparagraph (3) of Section 562.076 clarifies its relevancy—voluntary intoxication is relevant on issues of conduct but irrelevant as to any mental state that is an element of the offense.[14]

The General Assembly has chosen to disallow consideration of voluntary intoxication when a defendant's state of mind is at issue, and doing so did not offend Mr. Fanning's rights under the Due Process Clause. *See State v. Pointer*, 932 S.W.2d 871 (Mo.App. W.D.1996); *State v. Armstrong*, 930 S.W.2d 449, 452 (Mo.App.1996). The second point is denied.

### Denial of a Rule 29.15 Motion Without an Evidentiary Hearing

 Mr. Fanning asserts as his third point that the court erred when it denied, without evidentiary hearing, his Rule 29.15 motion alleging ineffective assistance of counsel. Mr. Fanning claims that his counsel failed to call him, Gene Stoner, and Detective John Williams as witnesses at trial. Review of the denial of post-conviction relief is limited to determining whether the findings and conclusions of the trial court are clearly incorrect. *Erwin*, 848 S.W.2d at 484. The motion court's findings and conclusions are clearly erroneous only when the reviewing court has reviewed the entire record and has a firm and definite conclusion that a mistake has been made. *State v. Fitzgerald*, 781 S.W.2d 174, 186 (Mo.App. E.D.1989). To prevail on a claim for ineffective assistance of counsel, the movant must satisfy a two-prong test. First, the movant must show that counsel's performance was deficient in that counsel failed to exercise the customary skill

and diligence that a reasonably competent attorney would manifest under similar circumstances and second, that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel for failing to find and interview witnesses, the movant must show not only that the witnesses could have been found through reasonable investigation, the movant must also show that the witnesses would have testified if called and that the testimony would have provided a viable defense. *State v. Twenter*, 818 S.W.2d 628, 639–640 (Mo. banc 1991). To be entitled to an evidentiary hearing, (1) a movant must cite facts, not conclusions, which, if true, would entitle movant to relief; (2) the factual allegations must not be refuted by the record; and (3) the matters complained of must prejudice the movant. An evidentiary hearing is not required if the motion court determines that the motion and the files and records of the case conclusively show that the movant is entitled to no relief. Rule 29.15(g); *State v. Blankenship*, 830 S.W.2d 1, 16 (Mo. banc 1992).

### Decision Not to Call Gene Stoner as a Witness

 Mr. Fanning's amended post-conviction motion stated that he believed if Mr. Stoner had been called as a witness, Mr. Stoner would have testified that he was present and also struck Mr. Fanning during the altercation that precipitated Mr. Fanning stabbing the victim. The evidence at trial disclosed that Mr. Fanning ran up to the victim from behind and attempted to punch the victim. The victim avoided the punch and struck Mr. Fanning. Mr. Fanning drew

**14.** Evidence is logically relevant to prove or disprove a mental state if its existence appears more or less probable than it did before the state offered the evidence. *See* Fed.R.Evid. 401. Because voluntary intoxication or a drugged condition has no legal force to negate a necessary mens rea, disallowing evidence of it for those reasons cannot prejudice a defendant. Evidence must be both logically and legally relevant. *Olinger v. General Heating & Cooling Co.*, 896 S.W.2d 43, 48 (Mo.App. W.D.1994). Logically relevant evidence is not necessarily admissible.

To be admissible, evidence must be "legally relevant." *Id.* Evidence is relevant when the "offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Id.* "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence)." *Id.*

a knife and stabbed the victim at least seven times. The victim bled to death from a stab wound to his heart.

Even had Mr. Stoner testified at Mr. Fanning's trial as Mr. Fanning believed he would have, his testimony would not have provided Mr. Fanning with a viable defense. The evidence presented reveals that Mr. Fanning was the aggressor. He does not claim Mr. Stoner would have refuted this evidence. He claims only that Mr. Stoner would have acknowledged striking Mr. Fanning.

■ The right of self-defense is a person's privilege to defend himself against personal attack. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984). Deadly force may be used in self-defense only when there is (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *Id.*

Mr. Fanning was the aggressor in the altercation with the victim. Mr. Stoner, had he testified as Mr. Fanning stated that he would have, would not have refuted that evidence. Mr. Stoner's testimony would not have provided Mr. Fanning with a viable defense. The trial court did not commit error in denying Mr. Fanning's post-conviction Rule 29.15 motion for defense counsel's failure or refusal to call Mr. Stoner as a witness at trial.

### Decision Not to Call Detective John Williams as a Witness

■ Mr. Fanning asserts that the motion court erred in denying his Rule 29.15 post-conviction motion regarding trial counsel's failure to subpoena and call Detective John Williams as a trial witness. The motion court found that Mr. Fanning's counsel could not be ineffective for failing to present inadmissible and cumulative evidence. Movant's amended motion filed in the motion court asserted that he "anticipates" Detective

Williams would have stated, if called to testify at the trial, that Mr. Fanning told him he had difficulty reading and writing and that he, Detective Williams observed a bruise "to [Mr. Fanning's] nose area," that was consistent with Mr. Fanning having been hit in the altercation between him and the victim. Assuming that Detective Williams would have testified as asserted in Mr. Fanning's motion, the testimony would not have provided Mr. Fanning with a viable defense. The court's ruling, without an evidentiary hearing, as to trial counsel's failure or refusal to call Detective Williams as a witness at trial was correct. Mr. Fanning's third point is denied.

### Trial Counsel's Alleged Failure to Call Mr. Fanning to Testify

■ Mr. Fanning claims in his Rule 29.15 post-conviction motion that his trial counsel "failed to allow movant to testify in his own behalf." He also asserts that he informed his counsel several times before trial that he wanted to testify. The record is void of whether Mr. Fanning elected to waive his right to testify. The criminal defendant's decision to exercise the right to testify is personal to the defendant. In *State v. Blewett*, 853 S.W.2d 455, 460 (Mo.App. W.D.1993), this court, quoting from *U.S. v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987), addressed the right of a criminally charged defendant to testify at trial on his own behalf. The court stated:

In *Rock v. Arkansas*, [483] U.S. [44, 49] [107 S.Ct. 2704, 2707, 97 L.Ed.2d 37] (1987), the Supreme Court explicitly confirmed that criminal defendants have a constitutional right to testify on their own behalf. Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right. *See Jones v. Barnes*, 463 U.S. 745, 751 [103 S.Ct. 3308, 3312, 77 L.Ed.2d 987] (1983)("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to ... testify in his or her own behalf...."); *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 [97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594](1977)(Burger, C.J., concurring); *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984), *cert. denied*, 475 U.S. 1064

[106 S.Ct. 1374, 89 L.Ed.2d 600](1986). Moreover, the defendant's waiver of his right to testify, like his waiver of other constitutional rights, should be made voluntarily and knowingly. *Cf., e.g., Boykin v. Alabama*, 395 U.S. 238, 242–43 [89 S.Ct. 1709, 1712, 23 L.Ed.2d 274](1969)(defendant's guilty plea must be made intelligently and voluntarily because it entails waiver of constitutional rights to trial by jury, to confront one's accusers, and against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 464–65 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461](1938) (waiver of right to counsel must be intelligently and competently made).

The state concurs with Mr. Fanning that the case should be remanded to the motion court for the limited purpose of determining whether Mr. Fanning voluntarily waived his right to testify at trial.

### Failure to Make Specific Findings of Fact as to Each Allegation Raised by Mr. Fanning

 Mr. Fanning asserts that the motion court failed to make specific findings of fact as to each allegation he raised in his Rule 29.15 post-conviction motion. The motion court entered findings of fact and conclusions of law as to each issue raised in Mr. Fanning's amended motion. The amended motion attempted to incorporate by reference Mr. Fanning's *pro se* post-conviction motion by reference. The *pro se* motion asserted twenty-one allegations. Mr. Fanning cites Rule 29.15(i) as authority for the requirement that the motion court is required to issue findings of fact and conclusions of law on all issues presented in a Rule 29.15 post-conviction motion. The Missouri Supreme Court stated in *Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978):

> In ruling on the [post-conviction] motion, whether with or without an evidentiary hearing, the court shall follow rule 27.26(I) and make findings of fact and conclusions of law on all issues presented. Only if that is done can the appellate court make the kind of review contemplated by rule 27.26(j). A mere recital or statement that the motion, files and records conclusively show that movant is entitled to no relief will not constitute compliance with rule 27.26(I). Nor will findings and conclusions be supplied by implication from the trial court's ruling. Specific findings and conclusions are contemplated and required.

The trial court did not address all of the issues asserted by Mr. Fanning in its findings of fact and conclusions of law. Each issue must be addressed.

Accordingly, the judgment of convictions is affirmed, and the order denying the post-conviction motion is affirmed in part and reversed and remanded in part. The case is remanded to the motion court for hearing on movant's claim that his counsel prevented him from testifying at trial and for the motion court to address the issues not addressed in the court's findings of fact and conclusions of law.

All concur.