**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Donald HEFFLINGER,**
**Defendant/Appellant.**

**No. ED 80828.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2003.

N. Scott Rosenblum, John P. Rogers, Rosenblum, Schwartz & Rogers P.C., St. Louis, MO, for appellant.

John Munson Morris, III, Dora A. Fichter, Assistant Attorneys General, Jefferson City, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Defendant appeals from a judgment entered on a jury verdict finding him guilty of involuntary manslaughter in the first degree, in violation of Section 565.024.1(1) RSMo (2000), and assault in the second degree, in violation of Section 565.060.1(3) RSMo (2000), which convictions arose out of an automobile collision caused by defendant while driving his vehicle the wrong way on an interstate highway, killing a woman and injuring her husband. The trial court sentenced defendant to serve a term of seven years imprisonment and fined him $5,000 on the manslaughter conviction and sentenced him to serve a consecutive five-year term of imprisonment and fined him $5,000 on the assault conviction. On appeal, defendant contends that the trial court erred in excluding evidence of his intoxication during the commission of the crime and erred, or plainly erred, in instructing on assault in the second degree. We affirm.

The sufficiency of the evidence is not in dispute. On the afternoon of March 23, 2001, defendant, Donald Hefflinger, drove from the exit ramp of Route 32 into the northbound lanes of Interstate 55, a divided highway, turned left, headed across the traffic lanes to the median, backed up, and proceeded southbound against the oncoming traffic. A driver in the southbound lanes of Interstate 55, who observed defendant take this action, attempted to keep pace with defendant and signal defendant with his lights and horn that he was driving in the wrong direction and also tried to warn oncoming drivers. Defendant passed him at 65 to 70 miles per hour.

A northbound driver on Interstate 55 saw defendant's vehicle coming toward him at approximately 65 to 75 miles per hour. Defendant made no attempt to brake or avoid colliding with the driver's vehicle,

and the driver had to change lanes to avoid a collision. At the time, defendant was looking straight ahead and did not appear to be asleep. A second northbound driver in the right lane on Interstate 55 saw vehicles swerving off the road on both sides. He then saw defendant driving towards him. Defendant moved into that driver's lane of traffic, causing that driver to swerve onto the shoulder to avoid colliding with defendant. That driver then heard a crash. Defendant's vehicle had collided with a vehicle driven by Joyce Preslar who was driving northbound on Interstate 55, accompanied by her husband, Jerry Preslar. Mrs. Preslar was killed and Mr. Preslar suffered an injury to his foot and torn muscles in his side. He missed two and a half to three months of work as a result of the torn muscles, which still hurt at the time of trial, nine months later.

Defendant was charged by information with murder in the second degree and armed criminal action with respect to Mrs. Preslar's death, assault in the first degree and armed criminal action with respect to Mr. Preslar's injuries, and two other offenses with respect to the second northbound driver. At trial, the jury was instructed on murder in the second degree, in violation of Section 565.021 RSMo (2000), involuntary manslaughter in the first degree, in violation of Section 565.024.1(1) RSMo (2000), involuntary manslaughter in the second degree, in violation of Section 565.024.3 RSMo (2000), and armed criminal action, in violation of Section 571.015 RSMo (2000), in Mrs. Preslar's death. The jury was further instructed on assault in the first degree, in violation of Section 565.050 RSMo (2000), assault in the second degree, in violation of Section 565.060.1(3) RSMo (2000), assault in the third degree, in violation of Section 565.070 RSMo (2000), and armed criminal

action, in violation of Section 571.015, in Mr. Preslar's injuries. The jury returned a verdict finding defendant guilty of involuntary manslaughter in the first degree and assault in the second degree, and not guilty of the remaining charges.

For his first point defendant asserts that the trial court erred in granting the state's motion in limine to prevent him from presenting evidence of his intoxication at the time of the automobile collision. He claims that the evidence was admissible rebuttal evidence.

We first address whether this point is preserved. The state filed a motion in limine to prevent defendant from adducing evidence of his intoxication. At the pretrial conference, the court took up the state's motion in limine. Defense counsel advised the court that he had evidence of defendant's alcohol consumption before the accident and evidence that defendant's blood alcohol level when he was admitted to the hospital after the accident was three times the legal limit. The trial court sustained the motion. Subsequently, during trial, defendant made an offer of proof through himself and two other witnesses that he had consumed a substantial quantity of beer in the hours before the accident that his blood alcohol level at the hospital was 0.249 and that at 11:00 p.m. his breath still emitted the odor of alcohol. The transcript does not reflect a subsequent trial court ruling on the admissibility of this evidence, but it was never admitted.

■■■ The first issue regarding preservation is whether defendant took the required steps at trial to preserve error in the exclusion of this evidence. When a court has excluded evidence in its ruling on a motion in limine, an offer of proof must be made at trial in order to preserve the record for appeal and to allow the trial court to consider further the claim of admissibility. *Wilkerson v. Prelutsky*, 943

S.W.2d 643, 646 (Mo. banc 1997). In this case, defendant made an offer of proof at trial that adequately established a record for appellate review and the trial court was given sufficient opportunity to reconsider its ruling on the motion in limine. It is clear that the court did not admit the evidence even though plaintiff never explicitly obtained a ruling on the record. Under these circumstances we may consider the error adequately preserved for review. *Id.* at 647.

■■■ The second issue regarding preservation is the sufficiency of the point relied on. A motion in limine is interlocutory in nature and not appealable. *State v. Blackman*, 875 S.W.2d 122, 143 (Mo.App. 1994). A point relied on that refers only to a ruling on a motion in limine is technically deficient. *Wilkerson*, 943 S.W.2d at 646. However, if the deficiency in the brief does not impede disposition on the merits, we will exercise our discretion to review it. *Id.* The point provides sufficient notice to the parties and to us of the issue on appeal and we will treat the point as preserved.

Accordingly, we turn to the merits of the issues raised on appeal. Defendant contends that he should have been allowed to present evidence of his intoxication, not to negate his mental state, but to rebut the inferences the state sought to draw from his conduct; that he did not swerve or brake when heading toward the vehicles, that he appeared awake, that he was slaloming, and that he drove directly at Mr. and Mrs. Preslar and at the second northbound driver. Defendant argues that his "failure to act" in this case is conduct that could be explained by intoxication in order to rebut a contention that defendant's failure to act was indicative of his guilty mind, citing *State v. Roberts*, 948 S.W.2d 577 (Mo. banc 1997) and *State v. Taylor*, 929 S.W.2d 925, 928 (Mo.App.1996). He fur-

ther argues that evidence of his intoxication was admissible to show that the inference arising from the state's evidence is not warranted, citing *State v. Ford*, 639 S.W.2d 573, 576 (Mo.1982).[1]

Defendant's attempt to characterize his behavior on the highway before the collision as "conduct" or "failure-to-act" evidence which can be explained by intoxication to rebut an inference of a "guilty mind" misses the mark. Defendant's conduct leading up to the collision was offered to show his mental state in committing the crime. The trial court did not err in preventing him from explaining his mental state and attempting to negate culpability with evidence of his voluntary intoxication.

■ When a defendant's state of mind is at issue, Missouri law does not allow consideration of voluntary intoxication. Section 562.076 RSMo (2000) provides in part:

> 1. A person who is in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.
>
> * * *
>
> 3. Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. * * *

At least since the decisions in *State v. Harlow*, 21 Mo. 446 (1855) and *State v. Cross*, 27 Mo. 332 (1858), the courts of this state have treated "a sober person and a voluntarily intoxicated person as equally responsible for conduct." *State v. Erwin*, 848 S.W.2d 476, 481–82 (Mo. banc 1993). As a result, evidence of voluntary intoxication on the issue of state of mind is irrelevant and should be excluded. *Id. See also State v. Roberts*, 948 S.W.2d 577, 588 (Mo. banc 1997).

■ Under this rule, evidence of intoxication is not relevant to rebut the state's circumstantial evidence of intent. *State v. Fanning*, 939 S.W.2d 941, 945 (Mo.App. 1997). As our colleagues explained in *Fanning*, direct proof of a mental state is seldom available and is inferred from circumstantial evidence including defendant's testimony and defendant's conduct before, during, and after the act. *Id.* To allow evidence of that conduct to be explained by intoxication "would unjustly vindicate the voluntarily intoxicated person's unlawful conduct because the person was intoxicated." *Id.*

In *Fanning* the court gave the example of a murder charge which required the state to prove that the defendant intended to kill a human being:

> The state is able to show that the defendant aimed a firearm at the victim and shot him point-blank. If this is the only evidence, the jury will likely conclude beyond a reasonable doubt that the defendant did have the requisite intent. To distinguish between whether the defendant did so while sober or voluntarily intoxicated would hold the sober defendant accountable for the murder while providing the intoxicated defendant an excuse for the same behavior.

*Id.*

■ However, when the state has offered evidence of acts demonstrating

---

**1.** The *Ford* case states a broad rule for the admission of explanatory evidence and does not involve intoxication. The other cases on which defendant relies are discussed below and do not support defendant's argument.

consciousness of guilt, Section 562.076.3 allows a defendant to introduce evidence of voluntary intoxication to rebut the inference of consciousness of guilt that may be drawn from those acts. *Roberts*, 948 S.W.2d at 589. Relevant acts, conduct, and declarations of the accused that are admissible to show a consciousness of guilt or a desire or disposition to conceal the crime usually occur after the crime is committed. *Id.; State v. Bridges*, 349 S.W.2d 214, 216 (Mo.1961). This conduct is "failure-to-act" evidence, that is, "evidence that the defendant failed to take action that a person who did not possess a guilty mind would be expected to take." *Roberts*, 948 S.W.2d at 589. Examples of such conduct include flight and hostage taking, *State v. Johns*, 34 S.W.3d 93, 112 (Mo. banc 2000); escape, *State v. Thompson*, 985 S.W.2d 779, 789 (Mo. banc 1999); false denials, *State v. Isa*, 850 S.W.2d 876, 894 (Mo. banc 1993); failure to call the police or an ambulance for the victim in a reasonable time, *State v. Taylor*, 929 S.W.2d 925, 928 (Mo. App.1996); and destruction, suppression, or fabrication of evidence, *State v. Henderson*, 750 S.W.2d 555, 560 (Mo.App. 1988). A defendant's conduct or failure to act in these circumstances gives rise to an inference of a guilty mind or consciousness of guilt. *Roberts*, 948 S.W.2d at 589. The rationale for admitting this evidence is that it constitutes an admission by conduct that constitutes circumstantial evidence of consciousness of guilt and thus of the fact of guilt. 2 JOHN STRONG, MCCORMICK ON EVIDENCE Section 263, at 172 (5th ed.1999).

■ In this case the evidence that defendant turned his car around on an interstate divided highway, drove the wrong way, and aimed his car at oncoming traffic was relevant circumstantial evidence of his intent leading up to the commission of the crime, not subsequent conduct that showed consciousness of guilt. As evidence of in-

tent, it could not be rebutted or explained by evidence of defendant's voluntary intoxication.

The trial court did not err in excluding the evidence of defendant's voluntary intoxication. Point one is denied.

For his second point defendant asserts that the trial court erred or plainly erred in submitting Instruction No. 11, assault in the second degree, to the jury because there was no evidence of serious physical injury as defined in the instruction.

■ At trial, defendant objected to instruction No. 11 on the ground that there had been no evidence of serious physical injury to Mr. Preslar. However, in his motion for new trial, defendant's only stated reason that the instruction was not submissible was that there was no evidence of recklessness. Under Rule 28.03, counsel must make "specific objections to instructions or verdict forms considered erroneous" and the "objections must also be raised in the motion for new trial in accordance with Rule 29.11." Rule 29.11(d) further requires that "[w]here definite objections or requests were made during the trial, including specific objections to instructions, a general statement in the motion [for new trial] of any allegations of error based thereon is sufficient" to preserve the error for appellate review. This point is not preserved because the motion for new trial did not, generally or otherwise, base a claim that Instruction No. 11 was erroneous on the ground that this instruction was not supported by sufficient evidence of serious physical injury. *State v. Albarado*, 6 S.W.3d 197, 206 (Mo. App.1999).

■ We will not review a claim of plain error under Rule 30.20 unless there are substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Chaney*, 967 S.W.2d 47,

59 (Mo. banc 1998), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). There are no extraordinary circumstances in this case to justify reviewing this argument as a matter of plain error. *State v. Mosley,* 980 S.W.2d 1, 3 (Mo.App.1998). *See State v. Briggs,* 740 S.W.2d 399, 401 (Mo.App.1987). Point two is denied.

The judgment of the trial court is affirmed.

PAUL J. SIMON, P.J., and GARY M. GAERTNER, SR., J., concur.