Jane OLINGER, Respondent,

v.

**GENERAL HEATING & COOLING
CO., Appellant.**

No. WD 47865.

Missouri Court of Appeals,
Western District.

Nov. 8, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1994.

William M. Modrcin, S. Margene Childress, Kansas City, for appellant.

Rik N. Siro, Blumer Nally & Siro, Kansas City, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and SPINDEN, JJ.

ULRICH, Presiding Judge.

Defendant General Heating and Cooling Company (GHC) appeals the judgment entered in behalf of plaintiff Jane Olinger for retaliatory discharge. The jury awarded Ms. Olinger $14,048 in actual damages and $86,000 in punitive damages and judgment in those sums was entered.

GHC alleges several points on appeal. It contends that the court erred (1) in allowing Ms. Olinger to submit her claim for wrongful discharge to the jury, (2) in permitting the introduction into evidence of GHC's guilty plea in the ancillary federal criminal case, (3) in allowing a claim for punitive damages, (4) in refusing to admit GHC's mitigating evidence in the punitive damage portion of the trial, and (5) in permitting Olinger to testify about Pam Oberholtz's statement.

The judgment of the trial court is affirmed.

GHC is a wholesale distributor of commercial and residential heating and cooling units. In 1989, the company employed approximately 135 people. GHC routinely operated advertising and rebate promotions for Carrier/Bryant (Carrier), a manufacturer of heating and cooling units. For several years, Carrier was GHC's largest product line. Pursuant to terms and conditions established

by Carrier, GHC could qualify for sales rebates paid by Carrier.

Ms. Olinger worked for GHC for several years, and her duties varied. She began working for GHC on August 1, 1985, as a mail room/literature clerk. She consistently received annual salary increases and year-end bonuses. In or around November 1988, Ms. Olinger was transferred to the rebate and advertising department where she was trained by Pam Oberholtz, her supervisor, to process rebate claims under the Carrier rebate program.

When Ms. Olinger was required to prepare and submit false rebate claims, she voiced concern about the illegality of the claims not only to fellow employees but also to her current and former supervisors. As the number of false rebates increased, Ms. Olinger discussed the rebate scheme with a friend who was an FBI agent. Ultimately, she began assisting the FBI in its investigation.

Before GHC learned about the FBI investigation, GHC transferred Ms. Olinger out of rebate and advertising and returned her to her previous position as mail room/literature clerk.

In early October 1989, the FBI conducted a surprise raid on GHC and indicated that it had an informant. Ms. Olinger immediately became the object of suspicion, and she experienced threats of personal harm and property damage. On October 19, 1989, GHC placed her on leave of absence of an undetermined duration. She was the only employee placed on leave during the investigation.

The FBI investigation resulted in the U.S. Attorney's filing a criminal charge against GHC in U.S. District Court, Western District of Missouri. GHC pleaded guilty to one count of mail fraud on March 16, 1990, for having used the mails in furtherance of the scheme to defraud Carrier in connection with the Carrier rebate program. As a consequence of GHC's conduct, Carrier terminated its distributorship agreement with GHC on March 28, 1990.

GHC fired Ms. Olinger effective March 30, 1990. Seeking an explanation for her firing,

Ms. Olinger requested a Service Letter. GHC responded almost two months later, stating that Ms. Olinger's "continued employment would have had a negative effect on company morale and productivity."

On June 25, 1990, Ms. Olinger filed suit for wrongful discharge against GHC. Following the conclusion of the evidence, the jury returned its verdict and judgment was entered on behalf of Ms. Olinger. From this judgment, GHC appeals.

I.

As point one on appeal, GHC contends that the trial court erred in allowing Ms. Olinger's claim for wrongful discharge to be submitted to the jury. GHC contends that the evidence failed to establish a causal connection between Ms. Olinger's discharge and her activity as an FBI informant.

▇▇▇▇ In determining whether the plaintiff made a submissible case, this court must view the evidence in the light most favorable to the plaintiff, according her the benefit of all reasonable inferences. *Haynam v. Laclede Elec. Co–Op., Inc.,* 827 S.W.2d 200, 205 (Mo. banc 1992). The appellant's evidence is disregarded except insofar as it may aid the plaintiff's case. *Nettie's Flower Garden v. SIS Inc.,* 869 S.W.2d 226, 231 (Mo.App.1993). Furthermore, "[t]he evidence and inferences must establish every element and not leave any issue to speculation." *Id.*

▇▇▇▇ Simply because an essential element is proven by circumstantial evidence does not mean it is subject to speculation. "[A] finding essential to recovery may be proved by circumstantial evidence," *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 866 (Mo.App.1985), but "the shown circumstances must be such that the facts necessary to support the finding may be inferred and reasonably must follow." *Stark v. American Bakeries, Co.,* 647 S.W.2d 119, 125 (Mo. banc 1983).

▇▇▇▇ The employment-at-will doctrine provides that an employer can discharge an at-will employee[1] at any time for cause or

---

1. An employee who does not have a contract for   a definite period of time is considered an at-will

without cause. *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d at 870–71. The public policy[2] exception to the at-will employment doctrine "provides that an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy has a cause of action against the employer for wrongful discharge." *Id.* at 871. This narrow exception protects employees who do not have bargaining power to command employment contracts but are "entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." *Clark v. Beverly Enterprises–Missouri, Inc.*, 872 S.W.2d 522, 525 (Mo.App. 1994) (quoting *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385, 388 (1980)).

■ Thus, although employers have a right to terminate an employee at-will without cause, no right exists to terminate such an employee for an unlawful reason or purpose that contravenes public policy.[3] *Clark v. Beverly Enterprises*, 872 S.W.2d at 525. Most recently, *Clark* articulates the four circumstances pursuant to which an employee at-will has a cause of action for wrongful discharge in tort for damages. These four circumstances involve discharging the employee because the employee (1) refused to perform an illegal act; (2) reported wrongdoing or violations of law or public policy by the employer or fellow employees; (3) acted in a manner public policy would encourage such as seeking public office, accepting jury duty, asserting a right to elect or designate a collective bargaining representative or joining a labor union; or (4) filed a worker's compensation claim. *Id.*

■ Ms. Olinger's claim falls within the second category, the whistleblowing exception. In order for her to prevail on her claim for retaliatory discharge, she must prove that

GHC discharged her because she reported to public authorities serious misconduct that constitutes a violation of law. Since the employer is unlikely to admit that retaliation is its motive for firing a "whistleblower," proof of this causal connection is by indirect or circumstantial evidence. *Wiedower v. ACF Industries, Inc.*, 715 S.W.2d 303 (Mo.App. 1986).

■ The jury could reasonably infer from this circumstantial evidence that Ms. Olinger's discharge was wrongful and that GHC's avowal of Ms. Olinger's negative effect on company morale and productivity in its Service Letter was pretextual. "Even though an employer produces evidence of a legitimate reason for the employee's discharge, the plaintiff who is able to persuade the jury that the employer's reason is pretextual and not causal is entitled to the verdict." *Wiedower v. ACF Industries, Inc.*, 715 S.W.2d at 307.

Ms. Olinger showed she was a good worker whose work product was appreciated by her employer. She received annual pay raises and bonuses. Prior to the FBI investigation when she was no longer needed in the rebate department, GHC chose to transfer her back to her prior position as mail room/literature clerk rather than terminate her employment. Although she had expressed concern about the legality of the rebate scheme to her superiors and to her fellow employees, GHC took no action against her until after the FBI raided the company and told GHC that it had an informant. Ms. Olinger was suspected and immediately became the target of threats and accusations. Those persons who made threats against her were not placed on leave. Ms. Olinger was the only employee placed on leave during the FBI investigation of GHC. She was the only employee involved in the fraudulent operation to be fired.

---

employee. *Clark v. Beverly Enterprises–Missouri, Inc.*, 872 S.W.2d 522 (Mo.App.1994).

**2.** "While the precise definition of the term public policy presents difficulty, it is generally said to be that principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good; it is synonymous with the 'policy of the law' and 'the public good.'" *Brawner v. Brawner*, 327 S.W.2d 808,

812 (Mo. banc 1959) (overruled on other grounds by *Townsend v. Townsend*, 708 S.W.2d 646 (Mo. banc 1986)).

**3.** Under the controlling employment at-will cases, the holdings have carefully avoided using the common expression that an employer may fire an at-will employee for any reason. *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 870 n. 7 (Mo.App.1985).

Although GHC asserted that it eliminated Ms. Olinger's job to reduce overhead by "downsizing," the evidence supported the jury's apparent conclusion that this was pretextual. Ms. Olinger was fired two days after Carrier canceled its distributorship agreement with GHC. GHC's service letter omitted downsizing as a reason for Ms. Olinger's discharge. None of the other employees who participated or acquiesced in the illegal activity were fired. Consequently, the trial court did not err in submitting the wrongful discharge claim to the jury.

Point one is denied.

## II.

As point two on appeal, GHC claims it should be granted a new trial because evidence of its guilty plea to mail fraud had no probative value and substantially prejudiced the proceedings.

The admissibility of evidence lies within the sound discretion of the trial court and, due to the subjective nature of such a determination, will not be disturbed absent an abuse of discretion. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 367 (Mo. banc 1993). Relevancy is the main criterion for the admission of evidence. *Id.* Evidence must be both logically and legally relevant. Logically relevant evidence is not necessarily admissible. *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992). To be admissible, evidence must be "legally relevant." *Id.* Evidence is relevant when the "offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Earl v. St. Louis University*, 875 S.W.2d 234, 240 (Mo.App.1994). "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence)." *State v. Sladek*, 835 S.W.2d at 314.

Under Missouri law, employers "are not free to require employees, on pain of losing their jobs, to commit unlawful acts or acts in violation of a clear mandate of public policy expressed in the constitution, statutes and regulations promulgated pursuant to statute." *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d at 871. Cases falling under the public policy exception to the employment at will doctrine "generally involve employees fired for (1) refusing to violate a statute, (2) reporting violations of the law by employers or fellow employees, or (3) asserting a legal right." *Lay v. St. Louis Helicopter Airways, Inc.*, 869 S.W.2d 173 (Mo.App.1993).

To fall within section (2), the "whistleblowing" exception, Ms. Olinger must prove that her involvement in reporting violations of law led to her dismissal.[4] GHC's guilty plea and conviction established that the employer's use of the mail in furtherance of its scheme to obtain rebates to which it was not entitled was in violation of the charged federal criminal felony statute. The trial court found this evidence probative regarding whether GHC violated the law and that the proffered evidence outweighed the danger of unfair prejudice. Therefore, the trial court properly admitted evidence probative on a key trial issue. The guilty plea by a corporate official is an admission against interest, *See Warrenton Campus Shopping Ctr. v. Adolphus*, 787 S.W.2d 852, 854 (Mo.App.1990), and the plea and the conviction were not contested.

Point two is denied.

## III.

As point three, GHC contends that Ms. Olinger failed to make a submissible case for punitive damages. Appellate review on the submissibility of a claim for punitive damages requires this court to consider the evidence in the light most favorable to submitting the issue to the jury. *Walker v. Gateway Nat. Bank*, 799 S.W.2d 614 (Mo.App.1990).

In *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989), the Missouri Supreme Court clarified the ambiguity that had existed regarding the standards for submission of punitive damages. Using the language of the Restatement (Second) of Torts, § 908(2)

---

4. *See also Yow v. Village of Eolia*, 859 S.W.2d 920, 922 (Mo.App.1993) (indicating what an employee must prove in order to prevail under the public policy exception to the employment-at-will doctrine when an employee refuses to perform an illegal act).

(1979), the Court stated the law in language more readily understood by lawyers and lay people alike:[5] "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Burnett v. Griffith*, 769 S.W.2d at 789.

> "Justified as punishment and intended to make an example of a defendant on account of his outrageous conduct, punitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or [by] reckless disregard (from which evil motive is inferred) for an act's consequences."

*Id.* at 787.

■ The trial court properly allowed Ms. Olinger the opportunity to submit punitive damages to the jury. The record contains sufficient basis for permitting the jury to consider whether GHC's acts were willful and outrageous and motivated by GHC's evil motive or a reckless indifference for Ms. Olinger's rights. GHC summarily fired Ms. Olinger two days after the Carrier Corporation terminated its distributorship agreement subsequent to GHC's guilty plea to using the mails in furtherance of its scheme to defraud Carrier. The jury was free to infer that GHC intended to punish Ms. Olinger by firing her because she reported a federal crime.

Point three is denied.

## IV.

As point four on appeal, GHC argues that the trial court erred in excluding evidence of its involvement in community organizations. The standard of review for the admissibility of evidence is whether an abuse of discretion results in substantial and obvious injustice. *Miller v. Neill*, 867 S.W.2d 523, 528 (Mo.App. 1993); *State ex rel. Highway Commission v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 485 (Mo.App.1992). "As in all questions of reception of evidence based on relevancy, wide discretion should be afforded the trial court."

*Maugh v. Chrysler Corporation*, 818 S.W.2d 658 (Mo.App.1991).

■ Generally, defendants may admit evidence tending to mitigate punitive damages. "The award of exemplary damages never goes as a matter of right, but is discretionary with the jury in all cases.... In assessing such damages the jury should consider the aggravating and mitigating circumstances." *Summers v. Keller*, 152 Mo.App. 626, 133 S.W. 1180, 1183 (1911), *modified on other grounds*, 262 Mo. 324, 171 S.W. 336 (1914). Permissible evidence may show provocation, the absence of malice, the presence of good faith, acts performed under the advice of counsel, the defendant's good character. *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 662 n. 2 (Mo.App.1991) (indicating the many factors a jury may consider when assessing punitive damages); 25 C.J.S. *Damages* § 127 (1967).

■ GHC, a Missouri Corporation, is the named defendant. The proffered evidence pertains to officials of the company. That the officials of the company have personally been involved with a number of civic organizations including the United Way Campaign, the Greater Kansas City Boy's Club, the Better Business Bureau, the Missouri Independent College Fund, the Kansas Independent College Fund, and the Rotary Club has no bearing on GHC's contribution to civic groups in its capacity as a corporation. In its offer of proof, GHC indicated only that its CEO would testify that the officials of the company had been involved with a number of civic organizations. Without evidence of corporate sponsorship of or contribution to such activities, the admission of such evidence would only have distracted the jury.

■ Furthermore, reputation evidence and specific occurrences to prove substantive character are generally inadmissible in a civil proceeding unless character is at issue. *Haynam v. Laclede Elec. Co–Op., Inc.* 827 S.W.2d at 207–8. However,

---

5. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984) left the issue of malice in "decisional disarray," and resulted in Missouri's being the only state in the Union to recognize three levels of malice. *Burnett v. Griffith*, 769 S.W.2d 780, 786, 789 (Mo. banc 1989). The new version of MAI 10.01 devised by the Court in *Burnett* artfully eschews the use of the word *malice*.

[e]vidence of other acts of defendant than those alleged for which damages are sought, both preceding as well as following the particular acts, is admissible under an issue of exemplary damages **if so connected with the particular acts as tending to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed.**

*Maugh v. Chrysler Corp.*, 818 S.W.2d 658 (Mo.App.1991) (emphasis added) (quoting *Curry v. Hedrick*, 378 S.W.2d 522 (Mo. banc 1964)).

GHC offered to introduce evidence of community activities entirely unrelated to the corporation's tortious conduct for which damages were claimed. Unlike *Maugh v. Chrysler Corporation*, 818 S.W.2d 658 (Mo.App. 1991), where defendant Chrysler Corporation successfully appealed the trial court's exclusion of its vehicle replacement offer into evidence to mitigate punitive damages in an action by buyers of a "new" automobile which had been test driven and damaged by the manufacturer, the community activities of GHC's officials have no connection whatsoever on the disposition, intention, or motive of GHC in the wrongful discharge claim.

Point four is denied.

## V.

As its fifth, and final, point on appeal, GHC alleges the trial court improperly admitted prejudicial and inflammatory hearsay testimony when Ms. Olinger testified that Ms. Oberholtz, her supervisor, told her to process two or three bogus rebates for every valid one and that the directive emanated from GHC's management.

■■■ Admissions against interest are an exception to the exclusion of hearsay testimony. *Washburn v. Medical Care Group*, 803 S.W.2d 77, 83 (Mo.App.1990). If an employee is acting within the scope of the employee's duties and the employee has some executive capacity, then admissions against interest made by the employee are admissible against the employer. *Kansas City v. Keene Corp.*, 855 S.W.2d 360 (Mo. banc 1993). The burden of proof rests on the proponent

of such evidence to prove the fact and scope of the agency. *Washburn v. Medical Care Group*, 803 S.W.2d at 83. To establish scope, the proponent may rely on the apparent authority established when the employer creates "an appearance of power which leaves third parties to believe that the employee would speak on behalf of the employer." *Id.*

■■■ Ms. Oberholtz was doing the work in the rebate and advertising department prior to Ms. Olinger's transfer. Subsequently, Ms. Oberholtz trained and supervised Ms. Olinger in her activities while Ms. Olinger worked in the department, a period of approximately 9 months. When problems arose in her work, Ms. Olinger went to Ms. Oberholtz for guidance. At the time the alleged hearsay statement was made, Ms. Oberholtz had just come from a meeting with the management of GHC. She was acting within the course and scope of her employment and in her supervisory capacity when she instructed Ms. Oberholtz to process two or three fraudulent rebate claims for every legitimate claim. Finally, GHC was the beneficiary of the fraudulent claims—not Ms. Oberholtz.

Based on these facts and circumstances, Ms. Oberholtz possessed "executive capacity" in that her employer created in her the appearance of authority such that a third party employee like Ms. Olinger could reasonably believe she communicated on behalf of the employer. Thus, these facts support the reasonable conclusion that Ms. Oberholtz spoke for GHC in her professional relationship with Mr. Olinger. Furthermore, since Ms. Oberholtz was acting within the scope of her employment and possessed the requisite "executive capacity," her remarks to Ms. Olinger represent an admission against interest, admissible as an exception to the hearsay rule.

■■■ Even if the evidence were hearsay and inadmissible, admission of objectionable hearsay evidence will not constitute reversible error if such hearsay was merely cumulative to other evidence. *State v. Johnson*, 753 S.W.2d 576 (Mo.App.1988). Ms. Olinger testified, without objection, to the ratio of false to legitimate rebate claims. The company's admission that it knowingly and intentionally defrauded the Carrier Corpora-

tion and GHC's testimony in its case-in-chief that it pleaded guilty to one count of mail fraud established management as the source of statements about the processing of false claims. Therefore, Ms. Olinger's testimony that Ms. Oberholtz told her to process fraudulent rebate claims was not prejudicial even if the statement had constituted inadmissible hearsay.

Point five is denied.

The judgment is affirmed.

All concur.