Paul D. **ALTENHOFEN, Respondent–Appellant,**

v.

**FABRICOR, INC.; Barbara Summers and Kent Summers, Appellant–Respondent.**

**Nos. WD 58432, WD 58483.**

Missouri Court of Appeals, Western District.

May 14, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Application for Transfer Denied Aug. 27, 2002.

Bruce C. Jackson, Jr., Kansas City, for Respondent-Appellant.

Dennis E. Egan, Kansas City, for Appellant-Respondent.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Presiding Judge.

Fabricor, Inc., Barbara Summers, and Kent Summers (hereinafter "Appellants") appeal from the judgment entered following jury verdict in favor of Paul D. Altenhofen in his action for unpaid overtime wages and for retaliatory discharge in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq, and specifically 29 U.S.C. § 215 (hereinafter "FLSA"). Appellants contend that the trial court erred in overruling their motions for directed verdict and JNOV on (1) Mr. Altenhofen's retaliatory discharge claim, (2) the jury's award for lost wages and emotional distress damages, and (3) the jury's award of overtime pay. Appellants also contend that the trial court erred in instructing the jury on Mr. Altenhofen's retaliatory discharge claim. Mr. Altenhofen cross-appeals contending that the trial court erred in (1) granting Appellants' JNOV on the award of punitive damages; (2) denying liquidated damages on his retaliatory discharge claim; and (3) denying his motion for reinstatement. The judgment of the trial court is affirmed.

## Facts

Fabricor, Inc. is a small Missouri Corporation engaged in the fabrication of solid surface products, such as countertops used in kitchens, bathrooms, and recreational areas. Barbara Summers is the sole owner of Fabricor, Inc. and her husband, Kent Summers, is the "Operations Manager."

Fabricor, Inc. hired Mr. Altenhofen as a fabricator in September of 1994. Mr. Altenhofen's primary duty at Fabricor, Inc. was to manually fabricate solid surface products. Mr. Altenhofen was originally hired at $10.00 per hour. Two weeks after being hired, Mr. Altenhofen was switched to a piece-rate system and was paid according to the amount of product that he helped produce. Mr. Altenhofen remained on the piece-rate system for four months. While working piece-rate, Mr. Altenhofen regularly worked fifty hours or more per week, but was not paid overtime for hours worked over forty.

In January of 1995, Mr. Altenhofen was promoted to "Shop Foreman." While shop foreman, Mr. Altenhofen received a salary of $1,200 every two weeks. His salary was later increased to $1,300. While on salary, Mr. Altenhofen continued to work fifty hours or more per week but was not paid overtime for hours worked over forty.

In June of 1995, Fabricor, Inc. hired Darren Lister as a fabricator. Soon after being hired, Mr. Lister was put in charge of the "residential" area of the shop. Despite this change, Mr. Altenhofen remained shop foreman and was put in charge of the "commercial" area of the shop.

On February 5, 1996, Mr. Altenhofen filed a complaint with the Wage and Hour Division of the United States Department of Labor (hereinafter "DOL"), alleging that Fabricor, Inc. was not paying its employees overtime wages for hours worked over forty each week in contravention of federal law.

On February 14, 1996, Mr. Altenhofen was informed that Mr. Lister was buying the shop and was becoming his supervisor.[1] Mr. Altenhofen was demoted from his position as shop foreman, and he began receiving a $14.00 per hour wage.

On March 1, 1996, Fabricor, Inc. received a letter from DOL indicating that a DOL Wage and Hour Officer would appear at Fabricor, Inc. the following week to conduct an audit of time cards. That same day, Mr. Altenhofen was sent home early after being told by Mr. Lister that the Fabricor shop would be closing early and that everyone would be going home. When Mr. Altenhofen arrived home on the evening of March 1, 1996, a message was on his answering machine from Mr. Sum-

mers. Mr. Summers' message, which was date and time stamped Friday, 6:48 p.m., informed Mr. Altenhofen that his presence was not required at work the following Monday.

When Mr. Altenhofen arrived at the Fabricor, Inc. plant on Monday March 4, 1996, Mr. Summers informed him that his employment with Fabricor, Inc. was terminated. When Mr. Altenhofen asked why, Mr. Summers told him that Fabricor, Inc. did not have enough work at his skill level to retain him.

Mr. Altenhofen brought suit against Fabricor Inc, Barbara Summers, and Kent Summers for unpaid overtime (Count I), for retaliatory discharge in violation of the FLSA (Count II), and for retaliatory discharge in violation of Missouri public policy (Count III). A jury found in favor of Mr. Altenhofen on each of the three counts and awarded him (1) unpaid overtime against all defendants (Count I); (2) lost wages, actual damages, and punitive damages against all defendants (Count II); and (3) actual damages and punitive damages against Fabricor, Inc. (Count III).

After post-trial motions, the trial court entered judgment against all defendants in the amount of (1) $2,465.98 for unpaid overtime, adding $2,465.98 in liquidated damages (verdict A); (2) $20,000 for lost wages, $10,000 for actual damages, and $62,547.22 for attorney's fees and litigation expenses (verdict B). The trial court also entered judgment against Fabricor, Inc., (3) in the amount of $10,000 for retaliatory discharge in violation of Missouri public policy (verdict C). The trial court, however, denied liquidated damages on verdict B, entered judgment in favor of defendants on Mr. Altenhofen's claim for puni-

---

1. Although Mr. Lister's plans to buy the shop eventually fell through, Mr. Lister remained Mr. Altenhofen's supervisor throughout the remainder of Mr. Altenhofen's employment with Fabricor, Inc.

tive damages (verdict B), and entered judgment in favor of Fabricor, Inc. on Mr. Altenhofen's claim for punitive damages (verdict C).

By Nunc Pro Tunc Order dated March 27, 2000, the trial court found that the $10,000 actual damages awarded in Verdict C (Count III) was duplicative of the $10,000 actual damages awarded under Verdict B (Count II). Plaintiff was left with no recovery under Count III.

This appeal followed.

### Retaliatory Discharge, Lost Wages and Emotional Distress, and Unpaid Overtime

In points one, three, and four, Appellants contend that the trial court erred in overruling their motions for directed verdict and JNOV on (1) Mr. Altenhofen's retaliatory discharge claim; (2) the jury's award of lost wages and emotional distress damages; and (3) the jury's award of unpaid overtime. Appellants argue that Mr. Altenhofen failed to produce sufficient evidence to support the claims. Because Appellants' points one, three, and four require application of the same standard of review, those points are addressed first.

### Standard of Review

■ The standard of review for the denial of a motion for a directed verdict and a motion for JNOV is essentially the same. *Balke v. Cent. Mo. Elec. Coop.*, 966 S.W.2d 15, 20 (Mo.App. W.D.1997). JNOV for the defendant is only appropriate if the plaintiff fails to make a submissible case. *Id.* In reviewing for a submissible case, this court must accept all evidence and reasonable inferences favorable to the verdict, disregarding contrary evidence. *Id.* Missing evidence will not be supplied, and the plaintiff will not be given the benefit of unreasonable, speculative, or forced infer-

ences. *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App. E.D.1997).

■ A motion for JNOV should be granted only when reasonable minds cannot differ as to the ultimate disposition of the case. *Balke*, 966 S.W.2d at 20. The reviewing court will reverse the jury's verdict for insufficient evidence only where there is a "complete absence of probative fact" to support the jury's conclusion. *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998). The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony. *Gatley v. Wal–Mart Stores, Inc.*, 16 S.W.3d 711, 713 (Mo.App. S.D.2000).

### Retaliatory Discharge in Violation of Fair Labor Standards Act

In point one, Appellants argue that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict on Mr. Altenhofen's claim of retaliatory discharge in violation of FLSA.

■ A three-pronged framework governs the analysis of retaliatory discharge cases. First, the plaintiff must make a prima facie case by "showing participation in a protected activity, a subsequent adverse action by the employer, and some evidence of a causal connection between the protected activity ... and the subsequent adverse action." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993). Circumstantial evidence is sufficient to establish a causal connection between the protected activity and the adverse employment action. *Id.* For example, a showing that the adverse employment action so closely followed the protected activity in time could justify an inference of retaliatory motive. *Rath v. Selection Research, Inc.*, 978 F.2d 1087,

1090 (8th Cir.1992). Second, once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate an appropriate non-discriminatory reason for its action. *Schweiss*, 987 F.2d at 549. Finally, if the employer satisfies this burden, the plaintiff must then demonstrate that the proffered reason is pretextual. *Id.* To persuade the court that the employer's proffered reason is pretextual plaintiff need not always supply additional evidence. *Haglof v. Northwest Rehab., Inc.*, 910 F.2d 492, 494 (8th Cir.1990). Plaintiff's prima facie proof may be adequate to sustain plaintiff's position and persuade the trier of fact. *Id.*

■ Mr. Altenhofen presented sufficient evidence to make a submissible case for retaliatory discharge in violation of FLSA. The record reveals that Mr. Altenhofen filed a formal complaint on February 5, 1996, with the U.S. Department of Labor, Division of Wage and Hour alleging that Fabricor, Inc. was not paying overtime wages to its employees for hours worked over forty per week. Fabricor, Inc. received a letter from DOL on March 1, 1996, indicating that an audit would occur at Fabricor's plant the following week. That same day, Mr. Altenhofen was sent home early after being told by Mr. Lister that the shop was closing early and that everyone was "taking an early day."

When Mr. Altenhofen arrived home from work on Friday, March 1, 1996, Mr. Summers' message awaited him on his answering machine informing him not to come to work on Monday. When Mr. Altenhofen contacted Mr. Summers on Monday, March 4, 1996, Mr. Summers informed him that his employment had been terminated because Fabricor, Inc. did not have enough work at his skill level to continue his employment.

Although Mr. Lister told Mr. Altenhofen that the shop was closing early on March 1, 1996, Fabricor, Inc. employee John Young testified that Fabricor, Inc. did not close early on March 1, 1996, but remained open and that Mr. Altenhofen was the only employee sent home early on that date. Mr. Young also testified that, on the morning of March 1, 1996, he was operating a forklift when he observed Mr. Lister come out of the Fabricor office area. According to Mr. Young, Mr. Lister approached him and asked if he had contacted DOL. When Mr. Young replied no, Mr. Lister asked if Mr. Altenhofen had contacted DOL. Mr. Young replied, "I don't know." Mr. Young testified that upon returning from lunch, he noticed that Mr. Altenhofen was no longer at work and not until later did he discover that Mr. Altenhofen had been sent home.

While the DOL letter did not disclose the reason for the audit (Mr. Altenhofen's complaint), both Mr. and Mrs. Summers testified that they were aware of the DOL letter and its contents prior to termination of Mr. Altenhofen's employment. Additionally, both knew that Mr. Altenhofen had previously visited DOL regarding overtime pay at Fabricor, Inc.[2] Mr. and Mrs. Summers knowledge of Mr. Altenhofen's previous visit to DOL combined with Mr. Lister's inquiry about whether Mr. Altenhofen was the cause of the DOL audit and Mr. Altenhofen's effective discharge

**2.** In the summer of 1995, an inquiry by Fabricor, Inc. employee Patrick Dennis about overtime wages prompted Mr. Altenhofen to visit DOL and obtain information about overtime wage requirements. During this initial visit to DOL, Mr. Altenhofen did not file a complaint with DOL or identify Fabricor, Inc. as his employer. Mr. Altenhofen testified that when he later informed Mr. Summers that he had visited DOL to obtain information for Patrick Dennis on overtime wages, Mr. Summers asked him whether Mr. Dennis was worth keeping around.

Friday, March 1, 1996, with the attendant circumstances, provokes the reasonable inference that Appellants identified Mr. Altenhofen as the cause of the DOL audit prior to his termination.

Because the record evinces a causal connection between Mr. Altenhofen's DOL complaint and the subsequent termination of his employment from Fabricor, Mr. Altenhofen established a prima facie case for retaliatory discharge.

■ Having concluded that Mr. Altenhofen established a prima facie case, Appellants' articulated reason for terminating Mr. Altenhofen is considered. Appellants submitted that they terminated Mr. Altenhofen's employment because of his "poor productivity" and "bad attitude" and that the decision to terminate Mr. Altenhofen was "basically made . . . on February 29, 1996." Both Mr. and Mrs. Summers testified that they had been dissatisfied with Mr. Altenhofen's productivity since early January 1996. Mr. Summers also testified that Mr. Altenhofen disrupted other employees and that he was not producing enough to cover his salary. Appellants testified that Mr. Altenhofen was not terminated on February 29, 1996, because they decided that they wanted to "sleep on" their decision.

Despite Appellants' stated reasons for terminating Mr. Altenhofen's employment, the jury was entitled to disbelieve Appellants' testimony. The jury may have disbelieved the Appellants for several reasons. For example, while both Mr. and Mrs. Summers testified that they conducted several meetings in which Mr. Altenhofen's productivity was discussed, Mrs. Summers acknowledged that neither she nor Mr. Summers kept notes of such meetings. Although Mr. Lister testified that he had informed Mr. Altenhofen prior to

receipt of the DOL letter that Mr. Altenhofen's employment was in a "probationary period," Mrs. Summers could not remember any comments that Mr. Lister had made to Mr. Altenhofen about probation nor could she remember later reviewing Mr. Altenhofen's performance. Mr. Altenhofen never received memorialized criticism for his job performance that would support Appellants' claim that they were dissatisfied with Mr. Altenhofen's work. Although the absence of a written reprimand does not create the legal inference that an employer was satisfied with an employee's performance,[3] Mr. Altenhofen's never having received any written criticism from Appellants prior to his termination citing problems with his production may have affected Appellants' credibility with the jury. Mr. Altenhofen was told that he and all other workers were being sent home early on March 1, 1996, when the statement was not true and no other worker left early. He was also told that his job was terminated because Fabricor, Inc. did not have enough work at his skill level, admittedly not the reason Appellants latter asserted to justify Mr. Altenhofen's discharge.

Mr. Altenhofen introduced evidence to rebut Appellants' proffered reason for his discharge. He introduced a birthday card that he received on January 25, 1996, from Mr. Summers, Mrs. Summers, and Pat Sibenaller. The birthday card contained a handwritten message from Mrs. Summers stating, "Thanks for all your hard work and great ideas. Hope your birthday is a great one." Mr. Altenhofen also proffered the testimony of co-fabricator John Young. Mr. Young testified that he had never observed or heard that Kent Summers, Barbara Summers, or Darren Lister were dissatisfied with Mr. Altenhofen's productivity. This evidence further rebuts the

---

**3.** *Loomstein v. Medicare Pharmacies, Inc.,* 750 S.W.2d 106, 113 (Mo.App. E.D.1988).

Appellants' claim that Mr. Altenhofen's employment was terminated because of his failure to perform his job.

Sufficient circumstantial evidence was presented to support the jury's finding that Mr. Altenhofen's complaint to DOL was the immediate cause of the termination of his employment. Thus, the trial court did not err in denying Appellants' motions for directed verdict and JNOV on the claim of retaliatory discharge. Point one is denied.

### Lost Wages and Emotional Distress Damages

In point three, Appellants argue that the trial court erred in denying their motions for directed verdict and JNOV on the jury's award for lost wages and emotional distress damages.

■ Sufficient evidence was presented to support the jury's award of $20,000 in lost wage damages. Mr. Altenhofen adduced testimony from Mr. Lister that fabricators at Fabricor, Inc. typically worked fifty hours per week. Mr. Lister also stated that Fabricor, Inc. had "tons of work" throughout the time following Mr. Altenhofen's discharge on March 1, 1996, up until July 1997, when Mr. Lister left Fabricor, Inc. Mr. Altenhofen presented a pay stub from his last two weeks of employment at Fabricor, Inc. that reflected his rate of pay and the amount of overtime he worked during those last two weeks. Mr. Altenhofen also presented his tax returns for years 1996, 1997, and 1998. Although his hourly rate as a construction worker was greater than his hourly income at Fabricor, Inc., Mr. Altenhofen showed that the work was less-stable and his actual earnings were less since leaving Fabricor, Inc. Lastly, Mr. Altenhofen testified that as a construction worker, time periods between jobs when work was unavailable and inclement weather substantially reduced the hours he could work.

The record supports the award of lost wages and the trial court did not err in denying Appellants' motions for directed verdict and JNOV on the claim of lost wages.

■ Damages for emotional distress are recoverable under 29 U.S.C. § 216(b). Although the Eighth Circuit has not yet determined the point, the Seventh Circuit has continued to hold that emotional distress damages are appropriate relief for intentional torts, such as retaliatory discharge, and that they may be recovered under section 216(b) of FLSA. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 111–12 (7th Cir.1990), *cert. denied*, 502 U.S. 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991); *See also Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1229 (7th Cir.1995). In addition, the United States District Court for the Western District of Missouri, persuaded by the Seventh Circuit's position, has held that "compensatory ... damages are available for violation of the FLSA's anti-retaliation provision." *O'Brien v. Dekalb–Clinton Counties Ambulance Dist.*, 1996 WL 565817, at *6 (W.D.Mo. June 24, 1996).

In *Avitia*, employee was fired in retaliation for asserting his right to overtime wages. *Avitia*, 49 F.3d at 1219. Employee testified about the emotional distress that he suffered as a result of being discharged from a job that he had been at for thirteen years. *Id.* at 1227. Although the court found excessive the jury's award of $21,000, an award of $10,500, after remittitur, was found to be appropriate because there had been "more than the momentary pang, the momentary breaking down and crying" by employee. *Id.* at 1229–30.

■ Viewing the record in the light most favorable to the jury's award of emo-

tional distress damages, sufficient evidence was presented to support the jury's award of $10,000. Mr. Altenhofen testified that his work at Fabricor, Inc. gave him a sense of pride and satisfaction. When he discovered that he had been terminated from Fabricor he was "worried, concerned definitely, because obviously, I didn't have a job anymore." Mr. Altenhofen also testified that he experienced financial problems that were caused by his discharge. He testified that his financial difficulties caused him to experience emotional and financial strain. Lastly, although Mr. Altenhofen was eventually able to obtain employment as a construction worker at a much higher wage, Mr. Altenhofen testified that the work was less-stable, and his actual earnings were less since leaving Fabricor, Inc.

 Much like the employee's testimony in *Avitia*, Mr. Altenhofen's testimony, in this case, reveals "more than the momentary . . . breaking down and crying." In addition, the amount of damages to be awarded to a plaintiff is primarily within the province of the jury as such a determination involves questions of witness credibility and the weight to be accorded testimony. *Deck v. Kovac*, 864 S.W.2d 423, 425 (Mo.App. E.D.1993). The jury was able to observe Mr. Altenhofen when he was testifying and they apparently found his testimony to be sincere and sufficient to convince them that he merited the award they gave him.

 Appellants argue that Mr. Altenhofen's claim for emotional distress damages cannot stand because his emotional distress was not medically diagnosable. Appellants are misguided. Missouri case law is clear that "[w]hen an intentional tort is involved . . . the jury is free to consider such damages as embarrassment, humiliation, disgrace and mental suffering without

medical proof thereof." *Fust v. Francois,* 913 S.W.2d 38, 48 (Mo.App. E.D.1995).

The record supports the jury's award of $10,000 in emotional distress damages, and the trial court did not err in denying the motions for directed verdict and JNOV on the claim of emotional distress. Point three is denied.

### Overtime Pay

 In point four, Appellants argue that the trial court erred in denying their motions for directed verdict and for JNOV on Mr. Altenhofen's claim for unpaid overtime.

Section 207 of FLSA applies to employment compensated on a wage basis and on a piece rate basis. Section 207(a)(1) provides that:

> "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 207(g)(1) provides that employees employed at piece rates are to be compensated for their employment in excess of forty hours at "piece rates not less than one and one-half times the bona fide piece rates applicable to the same work when performed during nonovertime hours. . . ." 29 U.S.C. § 207(g)(1).

Sufficient evidence was presented to support the award of $2,465.98 in unpaid overtime. Mr. Altenhofen was originally compensated for his labor at $10.00 per hour. Two weeks after being hired, Mr. Altenhofen was put on a piece-rate system and remained on that system for four months. Mr. Altenhofen testified that he regularly worked over forty hours per

week at Fabricor, Inc. but never received overtime pay.

Mr. Altenhofen also testified that working twenty hours of overtime over a two-week period was the norm during his tenure at Fabricor, Inc. from September 1994 until March 1, 1996. To support his contention, he introduced into evidence his last pay stub from Fabricor, Inc. The pay stub indicated that Mr. Altenhofen had worked twenty-one hours of overtime during his last two weeks of employment at Fabricor, Inc. Based on his own calculations, Mr. Altenhofen claimed that he was entitled to $2,540.54 in unpaid overtime. The jury awarded him $2,465.98 in unpaid overtime, the same amount of unpaid overtime DOL determined Mr. Altenhofen was entitled to in a report dated May 13, 1996.

The record supports the jury's award of unpaid overtime.

Appellants argue that Mr. Altenhofen was exempt from receiving compensation for overtime during his employment as shop foreman because he was salaried as management and that hours worked over forty during that period of time should not have been included in the award. Because the record demonstrates that Mr. Altenhofen worked enough overtime hours to support the award of $2,465.98 without the inclusion of overtime hours from the period in which Mr. Altenhofen served as shop foreman and was salaried, Appellants' contention that Mr. Altenhofen was exempt from overtime pay while he was shop foreman need not be considered. Point four is denied.

### Retaliatory Discharge Instruction

In point two, Appellants claim that the trial court erroneously instructed the jury on Mr. Altenhofen's retaliatory discharge claim under FLSA. The instruction is as follows:

Your verdict must be for plaintiff Paul D. Altenhofen and against defendants Fabricor, Inc., Barbara Summers and Kent Summers if you believe:

First, while plaintiff was employed by defendant he filed a complaint with the United States Department of Labor, Wage and Hour Division, against defendant Fabricor, Inc., and

Second, plaintiff Paul D. Altenhofen was thereafter terminated from his employment with defendant Fabricor, Inc., and

Third, plaintiff's complaint to the United States Department of Labor was the motivating factor in defendant's decision to terminate plaintiff's employment, and

Fourth, plaintiff was thereby damaged. The phrase "motivating factor" means a consideration that moved the defendants toward their decision.

Where the immediate cause or motivating factor of discharge is the employee's assertion of statutory rights, the discharge is discriminatory under the Fair Labor Standards Act whether or not other grounds for discharge exist.

Specifically, Appellants contend that "the real problem in the instruction is the phrase 'whether or not other grounds for discharge exists.'" App. Reply Brief at 17. Appellants claim that such a phrase understates the burden of proof in a retaliatory discharge case.

Instruction number eleven was a not-in-M.A.I. instruction. When using a not-in-M.A.I. instruction, the instruction used must follow the substantive law and be understandable. *Clark v. Beverly Enters.-Mo., Inc.,* 872 S.W.2d 522, 526 (Mo. App. W.D.1994). Additionally, any error in the not-in-M.A.I. instruction must be prejudicial, and the merits of the action must be "materially affected" to be grounds for reversal on appeal. *Id.*

In *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir.1975), prior to having her employment terminated, employee had protested employer's request that she endorse a back-wage check back to employer and sign a wage-receipt form without receiving the proceeds. Employer claimed employee was discharged because of unsatisfactory job performance and because she was "out of control" at a meeting where the back-wage checks were discussed. In finding employee's discharge discriminatory, the Eighth Circuit held that "[w]here the immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under section 215(a)(3) *whether or not other grounds for discharge exist.*" *Id.* at 181 (emphasis added).

As *Brennan* clearly supports the disputed phrase within the instruction, the trial court did not err in instructing the jury on Mr. Altenhofen's claim for retaliatory discharge. Point two is denied.

## CROSS–APPEAL

Mr. Altenhofen cross-appeals claiming that the trial court erred in (1) granting Appellants' JNOV on the jury's award of punitive damage; (2) denying additional liquidated damages on his retaliatory discharge claim; and (3) denying his motion for reinstatement.

## Punitive Damages

In points one and two of Mr. Altenhofen's cross-appeal, Mr. Altenhofen argues that the trial court erred in sustaining Appellants' motion for judgment notwithstanding the verdict on the jury's award of punitive damages for retaliatory discharge in violation of FLSA (verdict B).[4] Mr. Altenhofen also claims that the trial court

erred in denying him the punitive damages that the jury awarded him for retaliatory discharge in violation of Missouri public policy (verdict C).

## Standard of Review

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). To make a submissible case for punitive damages, Mr. Altenhofen was required to present clear and convincing evidence that Appellants' conduct was outrageous because of evil motive or reckless indifference. *Lopez–Vizcaino v. Action Bail Bonds, Inc.*, 3 S.W.3d 891, 893 (Mo.App. W.D.1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Because the remedy of punitive damages is so extraordinary and harsh, it should be applied sparingly. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996).

Currently, federal circuits are split regarding whether punitive damages are available in retaliation cases under FLSA. *Compare Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir. 1990), *cert. denied*, 502 U.S. 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991) (holding that when Congress amended § 216(b) in 1977 by adding "legal relief" to the remedies it allows, Congress was opening the door to the traditional tort remedies of compensatory and punitive damages), *with Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir.2000), *cert. denied*, 532 U.S. 975, 121 S.Ct. 1609, 149 L.Ed.2d 474 (2001) (holding punitive damages are not available for violation of FLSA's anti-retaliation

---

**4.** The jury awarded Mr. Altenhofen punitive damages in the amount of $25,000 against Fabricor, Inc., $50,000 against Mr. Summers, and $75,000 against Mrs. Summers.

provision). Although the Eighth Circuit has not addressed the issue, the United States District Court for the Western District of Missouri has held that "[i]n the absence of conflicting interpretation of the amended § 216(b) by another circuit, the court is persuaded to follow the Seventh's Circuit's reasoning and hold that compensatory and punitive damages are available for violation of the FLSA's anti-retaliation provision." *O'Brien,* 1996 WL 565817, at *6. The Western District's decision in *O'Brien* occurred prior to the Eleventh Circuit's decision in *Snapp* however.

Despite being presented with the issue of whether punitive damages are available in retaliation cases under FLSA, the issue need not be addressed in this case because Mr. Altenhofen's claim for punitive damages, under verdict B and verdict C, fails for the reasons discussed below.

■ Mr. Altenhofen's claim for punitive damages for retaliatory discharge in violation of Missouri public policy under verdict C is without merit. The trial court, by Nunc Pro Tunc Order dated March 27, 2000, found that the $10,000 actual damages awarded in verdict C was duplicative of the $10,000 actual damages awarded under verdict B. The result is that Mr. Altenhofen received no recovery under his claim of retaliatory discharge in violation of Missouri public policy. Because Mr. Altenhofen did not appeal that judgment, Mr. Altenhofen may not claim error in the trial court's JNOV decision to deny him the punitive damages that the jury awarded under verdict C. *Coonis v. Rogers,* 429 S.W.2d 709, 716 (Mo.1968) (recognizing the rule that actual or nominal damages must be recovered before punitive damages can be awarded); *S. Mo. Dist. Council of Assemblies of God v. Hendricks,* 807 S.W.2d 141, 149 (Mo.App. S.D. 1991).

In sustaining Appellants' motion for JNOV on the punitive damages awarded by the jury in verdict B, the trial court specifically found that Mr. Altenhofen "failed to establish and prove that any defendant engaged in outrageous conduct or demonstrated an evil mind or motive or reckless indifference." The trial court did not commit error.

To support his contention that the trial court erred in granting Appellants' JNOV on his punitive damages claim, Mr. Altenhofen cites *Olinger v. Gen. Heating & Cooling Co.,* 896 S.W.2d 43 (Mo.App. W.D. 1994). In *Olinger,* plaintiff was required by her employer, a wholesale distributor of commercial and residential heating and cooling units, to prepare and submit false rebate claims to a manufacturer of heating and cooling units. *Id.* at 46. Plaintiff voiced her concern about the illegality of the claims but the number of false rebates only increased. *Id.* Ultimately, plaintiff assisted the FBI in an investigation. *Id.*

Before learning of the FBI investigation, employer transferred plaintiff to another position. *Id.* When the FBI conducted a surprise raid on employer, the FBI indicated that it had an informant. *Olinger,* 896 S.W.2d at 46. Plaintiff immediately became the object of suspicion. *Id.* She experienced threats of personal harm and property damages and was eventually placed on leave during the FBI's investigation. *Id.*

When the FBI's investigation led to employer's prosecution by federal authorities and when the manufacturer of the heating and cooling units terminated its distributor agreement with employer, plaintiff's employment with employer was terminated. *Id.* After concluding that plaintiff made a submissible case for retaliatory discharge, this court concluded that the trial court properly allowed plaintiff the opportunity

to submit punitive damages to the jury. *Id.* at 49.

*Olinger* is distinguishable from Mr. Altenhofen's case. In *Olinger,* employer not only subjected plaintiff to threats of personal harm and property damage, employer ultimately fired plaintiff because she reported employer's criminal conduct to law enforcement authorities rather than acquiesce in it. Allowing plaintiff the opportunity to submit punitive damages in *Olinger* was appropriate, as plaintiff proved employer's outrageous conduct and evil motive by clear and convincing evidence. While Appellants' conduct in terminating Mr. Altenhofen's employment was in violation of FLSA, such finding does not necessarily warrant an award of punitive damages. To so hold would make punitive damages mandatory in every proven case of retaliatory discharge. The remedy of punitive damages is extraordinary and harsh and should therefore be applied sparingly. *Rodriguez,* 936 S.W.2d at 110. Mr. Altenhofen has not proven by clear and convincing evidence that Appellants' misconduct was so outrageous because of Appellants' evil motive or reckless indifference to the rights of others that punitive damages must be awarded. The trial court did not err in its denial of punitive damages under verdict B. Point one of Mr. Altenhofen's cross-appeal is denied.

In point two of Mr. Altenhofen's cross-appeal, Mr. Altenhofen challenges the trial court's finding that "plaintiff's evidence failed to establish the net worth of any defendant, a necessary basis upon which the jury may impose reasonable punishment by awarding punitive damages." Mr. Altenhofen claims that evidence of net worth is not required to support punitive damages and that even if it was, he established the net worth and net sales of Fa-

bricor, Inc. Because point one of Mr. Altenhofen's cross-appeal is denied and is dispositive of the punitive damages issue, point two of Mr. Altenhofen's cross-appeal is also denied.

## Liquidated Damages for Retaliatory Discharge and Reinstatement

In his third and fourth points, Mr. Altenhofen claims that the trial court abused its discretion in failing to award liquidated damages on his retaliatory discharge claim and failing to grant him reinstatement, respectively.

### Standard of Review

An abuse of discretion is an erroneous finding and judgment which is clearly contrary to the facts and circumstances before the court—a judicial act which is untenable and clearly against reason and which works an injustice. *Beckman v. Beckman,* 545 S.W.2d 300, 301 (Mo.App.1976). The appellant bears the burden of showing an abuse of discretion. *Anglim v. Mo. Pac. R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988).

### Liquidated Damages

While Mr. Altenhofen cites decisions from the United States Court of Appeals for the Fifth and Seventh Circuits to support his contention that an award of liquidated damages is mandatory on FLSA

retaliation claims,[5] he concedes that the Sixth and Eighth Circuits have determined just the opposite.[6] Mr. Altenhofen acknowledges that in *Braswell*, the Eighth Circuit held that the language of section 216(b) of FLSA regarding retaliation claims gives the trial court discretion to award liquidated damages. *Id.* at 958. The court noted that:

> [T]he second sentence of section 216(b) which applies to retaliation claims, modifies the mandatory language used for overtime and minimum wage claims. In the second sentence, Congress ... used the word 'shall' but then added 'as may be appropriate to effectuate the purposes of [the provision prohibiting retaliation].' These additional words give discretion to the ... court to choose among the listed remedies or others the court deems appropriate in the particular case.

*Id.*

The court also concluded that "[s]uch discretion and flexibility is particularly appropriate in retaliation claims which, because of the many ways in which retaliation may be executed against an employee, require a variety of legal and equitable remedies to serve the purposes of the FLSA." *Id.* at 959.

In *Braswell*, plaintiffs were appealing the trial court's refusal to award liquidated damages. *Id.* at 958. Plaintiffs argued that the jury's finding of retaliation was sufficient to justify an award of liquidated damages. *Braswell*, 187 F.3d at 959. The court affirmed the district court's refusal to award liquidated damages on the retaliation claim because the plaintiffs failed to show how such an award would effectuate the purposes of FLSA. *Id.* The court concluded, "[p]laintiffs argument is tantamount to a conclusion that liquidated damages are mandatory in retaliation claims, an argument we rejected...." *Id.*

In this case, Mr. Altenhofen, argues that because "the jury found that the defendants purposefully retaliated against plaintiff by terminating his employment" and because "the jury rejected defendants' claim of a good faith reason" for the discharge, liquidated damages are appropriate.[7] Like the court in *Braswell*, this court does not find such an argument persuasive without additional reasons supporting an award of liquidated damages.

The trial court's denial of liquidated damages was not unreasonable. Point three of Mr. Altenhofen's cross-appeal is denied.

## Reinstatement

Reinstatement of employment is the appropriate remedy under section 217 of FLSA unless the trial court in its discretion finds compelling reasons to order something less. *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 881 (2nd Cir. 1988). Those reasons may include continued bitterness or hostility between the employer and employee, at least where the

---

**5.** Mr. Altenhofen cites *Lowe v. Southmark Corp.*, 998 F.2d 335 (5th Cir.1993) and *Avitia*, 49 F.3d 1219 (7th Cir.1995).

**6.** Mr. Altenhofen cites *Braswell v. City of El Dorado, Arkansas*, 187 F.3d 954 (8th Cir. 1999) and *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir.1988).

**7.** Mr. Altenhofen also argues that the jury's award of punitive damages provides support for an award of liquidated damages because the punitive damages award was predicated on the jury's finding that defendants' conduct was outrageous because of defendants' evil motive or reckless disregard of plaintiff's rights. Mr. Altenhofen's argument is without merit, however, as this court has upheld the trial court's determination that no reasonable juror could have found for plaintiff on the issue of punitive damages.

work place is a small one, or a plainly unsatisfactory work performance by the employee prior to discharge. *Id.* The trial court's denial of reinstatement is reviewed for abuse of discretion. *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 322 (8th Cir.1993).

Appellants persuaded the trial court that reinstatement of Mr. Altenhofen to his former job position would be "detrimental to the best interest of all parties and untenable." The trial court cited the following reasons for denying Mr. Altenhofen's motion: (1) Mr. Altenhofen's current and much higher paying employment; (2) the changed corporate direction of Fabricor, Inc.; (3) considerations respecting Mr. Altenhofen's productivity, history of criticizing and confronting management; (4) considerations of Mr. Altenhofen's disruptive tendencies and other activities which diminish employee morale; and (5) challenges respecting Mr. Altenhofen's skills as a fabricator.

Because the trial court's denial of reinstatement was not unreasonable given the facts of this case and because the trial court's denial of reinstatement was within the trial court's discretion, the decision will not be disturbed. *Grantham v. Trickey,* 21 F.3d 289, 296 (8th Cir.1994). Point four of Mr. Altenhofen's cross-appeal is denied.

When reinstatement is not feasible, the court may grant front pay as an alternative equitable remedy. *Id.* at n. 5 (citing *Standley,* 5 F.3d at 322). Mr. Altenhofen, however, abandoned front pay as an alternative equitable remedy.

The judgment of the trial court is affirmed.

BRECKENRIDGE and HARDWICK, JJ., concur.